**UNITED STATES of America, Appellee,**

v.

**William Frank HOPPE, Appellant.**

No. 80–1388.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1980.

Decided April 8, 1981.

Bruce C. Houdek, James, Odegard, Millert & Houdek, Kansas City, Mo., for appellant.

Ronald S. Reed, Jr., U. S. Atty., J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before LAY, Chief Judge, HENLEY, Circuit Judge, and HANSON,* Senior District Judge.

HENLEY, Circuit Judge.

Appellant, William Frank Hoppe, was indicted and charged with distribution of a controlled substance, cocaine, in violation of 21 U.S.C. § 841(a)(1). After a jury trial appellant was convicted and sentenced to a term of four years under the provisions of 18 U.S.C. § 4205(b) to be followed by a special parole term of three years. We affirm.

In April, 1979 Gary Crabtree, a former drug dealer and sometime addict, agreed to become a paid informant for the Drug Enforcement Administration (DEA) in Kansas City, Missouri. Task Force Officer Paula Phelan was primarily responsible for directing and monitoring Crabtree's activities.

Soon after becoming an informant, Crabtree contacted the appellant, Hoppe, and arranged to purchase cocaine from him in Denver, Colorado in early May, 1979. Crabtree explained to DEA officials that he and Hoppe previously had been partners in smuggling cocaine from South America into the United States.

Phelan accompanied Crabtree to Denver where she was introduced to Hoppe as a drug dealer from Kansas City interested in doing business with him. After spending several days in Denver, Phelan and Crabtree purchased some cocaine from Hoppe and returned to Kansas City.

After returning from Denver, Phelan told Crabtree to continue pursuing his various drug connections, including Hoppe, and report to her periodically. Crabtree, who lived in northern Arkansas, was given a

tape recorder and tapes so that he could record any telephone conversations he had with drug dealers. These tapes were then sent to Phelan. In addition, Crabtree intermittently would call Phelan and discuss his activities. These discussions, some of which concerned Hoppe, were at times recorded; more frequently Phelan took personal notes.

Between May, 1979 and early July, 1979, Crabtree had a number of telephone conversations with Hoppe. From these conversations it was agreed that Hoppe would sell more cocaine to Phelan. Crabtree called Phelan, told her of Hoppe's desire to sell her more cocaine, and gave her a number where Hoppe could be reached.

On July 8, 1979 Phelan called Hoppe who was in Denver. He told Phelan that he wished to sell her more cocaine, that he would be in Kansas City the next day, and that he would contact her when he arrived. On July 9, 1979 Hoppe arrived in Kansas City and telephoned Phelan. Between this time and July 12, 1979, the date of the cocaine sale from which Hoppe's conviction arose, Hoppe and Phelan had a number of telephone conversations. Some of the conversations were recorded while others were not. Phelan took personal notes of those interspersed conversations not recorded. If a conversation was not recorded it was because either Phelan did not have a recorder available or could not turn the recorder on without alerting Hoppe that the conversation was being recorded.

On July 12, 1979 Phelan met Hoppe at a Kansas City bar and purchased cocaine from him. Hoppe was arrested immediately. A preliminary hearing was held on July 20, 1979 and Hoppe was bound over to the grand jury which subsequently returned an indictment against him.

Appellant's trial commenced on October 15, 1979 and resulted in a hung jury, necessitating the declaration of a mistrial. Appellant was tried again on March 25, 1980. Entrapment was his sole defense. He con-

---

* The Honorable William C. Hanson, United States Senior District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

tended that he was constantly pressured to make a drug sale, despite a contrary desire, from the time he initially was contacted by Crabtree until the July 12 cocaine sale. The jury obviously did not accept appellant's defense, and returned a guilty verdict.

*Admission of Evidence.*

Ron and Sharon Kuykendall were close friends of Hoppe and acquainted with Crabtree. At times Crabtree would call the Kuykendalls when trying to contact Hoppe. In order to show that Hoppe had no desire to deal with Crabtree, and indeed was trying to avoid him, appellant called Sharon Kuykendall as a witness. On direct examination, Sharon Kuykendall gave testimony conflicting with that previously given by Crabtree. On cross-examination the following exchange occurred:

Q. (U. S. Attorney) You are the wife of Ron Kuykendall, I believe you testified?

A. (Sharon Kuykendall) Yes.

Q. Mr. Kuykendall was on trial in another courtroom in this Court House about a month ago, was he not?

A. Yes.

Q. Mr. Crabtree was a witness in that case, was he not?

A. Yes.

Q. Mr. Kuykendall was convicted, was he not?

A. Yes.

Appellant's objection to this testimony was overruled.

We note initially that this evidence was in no respect admitted for its substantive value. Rather, the evidence was used to show Sharon Kuykendall's possible bias toward Crabtree. Appellant contends that since the evidence showed no bias toward a party, but only toward another witness, that it is inadmissible. We disagree.

█ Evidence tending to show a witness' emotion, which emotion has a bearing on that witness' probability of telling the truth, is admissible. J. Wigmore & J. Chadbourn, Evidence In Trials At Common Law vol. IIIA § 940, at 775 (rev.1970). Sharon Kuykendall's probable hostility to-

ward Crabtree, resulting from his earlier testimony against her husband, certainly bears on her veracity. "We have difficulty in envisioning a situation responding more completely to the orthodox test of bias, the quality of emotional partiality." *Johnson v. Brewer*, 521 F.2d 556, 561 (8th Cir. 1975) (footnote omitted).

Appellant also contends that the probative value of the evidence is outweighed by its potential for prejudice and for that reason should be excluded. During the course of the trial, some evidence was introduced showing a close personal and working relationship between Hoppe and Ron Kuykendall. Appellant asserts that this evidence gave the jury the impression that Hoppe and Ron Kuykendall were codefendants, and led them to conclude that if Ron Kuykendall had been found guilty, then Hoppe also must be guilty.

We recognize, of course, that the probative value of an item or body of evidence may be so outweighed by its prejudicial effect that Rule 403 calls for exclusion. However, the task of balancing the probative value of the evidence against its purely prejudicial effect is primarily one for the trial court. And if the trial judge in the exercise of his discretion determines that the evidence should be admitted, we normally defer to his judgment.

*United States v. Hall*, 565 F.2d 1052, 1055 (8th Cir. 1977) (citation omitted). The district judge recognized the potential prejudicial effect of this evidence and gave a limiting instruction. Evidence of this relationship did not dominate the trial but was introduced only tangentially to the primary evidence. In the circumstances, we cannot say that the district judge's decision to admit the evidence was an abuse of discretion. *United States v. Bogers*, 635 F.2d 749, 751 (8th Cir. 1980).

*Jury Instructions.*

█ Appellant contends that the district court erred in failing to instruct the jury that, for purposes of entrapment, they should treat the informant Crabtree as a

government agent. In support of his proffered instruction, appellant cites *United States v. Sheldon*, 544 F.2d 213 (5th Cir. 1976).

*Sheldon* involved facts similar to the present case. A government informant dealt with the defendant for a number of weeks, repeatedly soliciting him to enter into a drug deal. Shortly before the actual drug sale, however, the informant stepped out of the picture and a government agent pursued the deal and made the purchase. The instruction given by the trial court effectively directed the jury that for purposes of entrapment they were to treat the informant's activities separately from the government agent's activities, and could not consider them as a continuous solicitation.

The court of appeals, recognizing that the activities of the informant were those of the government, found this instruction erroneous. We note that no such misleading instruction was given in the present case. Appellant reads *Sheldon* to require specifically instructing the jury that an informant and the government are one and the same. Our reading of *Sheldon* does not leave us with that conclusion.

"[We] do not think that, by calling the instruction in *Sheldon* erroneous, the Fifth Circuit in any way implied 'informers' are to be labeled 'agents.'" *United States v. Turner*, 490 F.Supp. 583, 594 (E.D.Mich. 1979). Though in the present case the jury was not specifically instructed to treat the informant as a government agent, the instructions given clearly tied the two together. Unlike *Sheldon*, the instructions did not prohibit such an association, and for that reason we find no error.

■ Appellant also contends the district court erred in failing to give his requested addict-informant instruction. This requested instruction suggests factors unique to an addict-informant which might have a particular bearing on his credibility. Several circuits have indicated that upon request such an instruction must be given. *Virgin Islands v. Hendricks*, 476 F.2d 776, 779 (3d Cir. 1973); *United States v. Collins*, 472 F.2d 1017, 1018–19 (5th Cir. 1972), *cert.*

*denied sub nom. Branch v. United States*, 411 U.S. 983, 93 S.Ct. 2278, 36 L.Ed.2d 960 (1973). *See generally United States v. Kinnard*, 465 F.2d 566, 569 (D.C.Cir.1972) (Bazelon, C. J.).

We decline to adopt such a per se rule, but rather align with those circuits holding that the circumstances of each case determine the need for an addict-informant instruction. *United States v. Tousant*, 619 F.2d 810, 812 (9th Cir. 1980); *United States v. Wright*, 542 F.2d 975, 988–89 (7th Cir. 1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977); *United States v. Gregorio*, 497 F.2d 1253, 1261–63 (4th Cir.), *cert. denied*, 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974).

■ The presence of the following factors has been found to obviate the need for an addict-informant instruction: a dispute as to whether the informant is actually an addict, *United States v. Gregorio*, 497 F.2d at 1262; cross-examination concerning the informant's addiction, *United States v. Cook*, 608 F.2d 1175, 1182 (9th Cir. 1979), *cert. denied*, 444 U.S. 1034, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980); an instruction alerting the jury that an informant's testimony should be viewed with care, *United States v. Tousant*, 619 F.2d at 812; and corroboration of the informant's testimony, *United States v. Wright*, 542 F.2d at 989. To dispose of appellant's contention, we need only note that all of these factors appear in the present case.

*Destruction of Evidence.*

During Hoppe's preliminary hearing it was revealed that Phelan had taken personal notes of some telephone conversations she had with Hoppe and Crabtree respectively. Counsel for Hoppe requested that these notes be made part of the United States Attorney's investigative file. The magistrate refused to enter an order to that effect, stating that although he did not feel the notes had to be kept he did not feel they would be destroyed in light of the request.

Prior to Hoppe's trial, counsel again requested production of the notes. Phelan

explained that the notes had been destroyed and their contents incorporated into her case report. Appellant was given the case report. Phelan further testified that although she thought the notes had been destroyed prior to the hearing, it was possible in light of her testimony at the hearing that the notes were destroyed subsequently. Appellant contends that the destruction of these notes violated his due process rights [1] and dictated dismissal of the indictment.

▮ In evaluating appellant's due process contention, we must consider (1) the agent's good faith in destroying the notes, (2) the likelihood that the case report materially varied from the personal notes, and (3) the likelihood that appellant was prejudiced by the destruction of the notes. *United States v. Williams*, 604 F.2d 1102, 1116 (8th Cir. 1979); *United States v. Dupree*, 553 F.2d 1189, 1191 (8th Cir.), *cert. denied*, 434 U.S. 986, 98 S.Ct. 613, 54 L.Ed.2d 480 (1977).

▮ Appellant contends that Phelan acted in bad faith by destroying the notes after the preliminary hearing. The evidence taken as a whole, however, suggests that Phelan acted in good faith. Phelan testified that it was her normal practice to destroy her personal notes after incorporating them in a case report. There is no evidence indicating that the United States Attorney instructed her to preserve the notes.[2] In the circumstances, we find that this supports the inference that Phelan did not act in bad faith. Indeed, the magistrate at the preliminary hearing informed all present that the law in this circuit indicated that the notes need not be preserved. Phelan reasonably may have assumed that counsel's concern at the preliminary hearing was with the content of the notes, and that since their substance had been incorporated into the case report there was no need to retain them.

In addition, there is no evidence indicating that the case report materially varied from the personal notes. Phelan testified that the report contained all facts relevant to the case. On cross-examination counsel was unable to establish that any possibly significant information had been omitted. We find unpersuasive appellant's argument that we should infer from the destruction of the notes alone that discrepancies existed. The absence of *any* evidence of inconsistency undercuts the argument that Phelan acted in bad faith.

Finally, it does not appear that appellant was prejudiced by the destruction of the notes. Phelan's conversations with Crabtree were solely for intelligence gathering. Her conversations with Hoppe which were evidenced only by her personal notes were interspersed with other conversations which were tape recorded. There is nothing to suggest that the unrecorded conversations differed materially from the inculpatory conversations which were recorded. In light of other evidence strongly indicating Hoppe's predisposition to sell drugs, *e. g.*, his prior drug dealings, his trip to Kansas City, it is clear that Phelan's personal notes would have been of no substantial aid to appellant.

In the circumstances, we find no due process violation. We also find meritless appellant's contentions that the destruction of certain tape recordings and a telephone bill violated his due process rights.

After a careful review of the transcripts of the proceedings and consideration of the parties' briefs, we hold that the judgment of the district court should be, and it is, affirmed.

---

**1.** Appellant also claims that destruction of the notes violated the Jencks Act, 18 U.S.C. § 3500. From the textual discussion of due process, we find that in the circumstances it follows that destruction of the notes did not on Jencks Act grounds constitute reversible error.

**2.** We do not condone any failure of the United States Attorney to direct Phelan to preserve the notes. If there were any evidence that he stood idle, knowing that the notes were being destroyed, we might have a different case.