UNITED STATES of America, Appellee,

v.

Edward Katsuaki SHIGEMURA,
Appellant.

UNITED STATES of America, Appellee,

v.

Bonnie Louise MORLEY, Appellant.

Nos. 81–2146, 81–2147.

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1982.

Decided June 30, 1982.

Rehearing and Rehearing En Banc
Denied Aug. 6, 1982.

**700**

Clark H. Cole, St. Louis, Mo., for appellant Shigemura; Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., of counsel.

Thomas E. Dittmeier, U. S. Atty., James E. Crowe, Jr., Asst. U. S. Atty., St. Louis, Mo., for appellee.

Karen Weinhaus Levy, St. Louis, Mo., for appellant Morley.

Before ARNOLD, Circuit Judge, STEPHENSON, Senior Circuit Judge, and HANSON,* Senior District Judge.

STEPHENSON, Senior Circuit Judge.

Defendants-appellants Edward Shigemura and Bonnie Morley were charged in a joint indictment and found guilty by a jury[1] after a joint trial. Shigemura was convicted of the Count I charge of conspiracy to steal goods from an interstate shipment with the intent to convert such goods to his own use, in violation of 18 U.S.C. §§ 371, 659. Both Shigemura and Morley were convicted of the Count III charge of possession of stolen goods, knowing such goods to have been stolen, in violation of 18 U.S.C. § 659.[2] Appellant Shigemura argues that the district court committed several errors in its instructions to the jury and that the collateral estoppel doctrine requires his discharge. Appellant Morley argues that the government agent's entry into her home by ruse or trick vitiates her consent to the entry and makes the subsequent search illegal. We affirm the district court.

## I. BACKGROUND

Carl Mask owns the Mask Brothers Trucking Company which is a Norman Lines operator in the St. Louis area. Carl's son, John Mask, was a driver for Norman Lines in February of 1981. On February 20, 1981, John Mask drove to Schneider Packing in St. Louis on behalf of Norman Lines to pick up a shipment of approximately 37,000 pounds of beef worth $40,262.92. After the truck was loaded, John

---

* The Honorable William C. Hanson, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable John F. Nangle, United States Judge for the Eastern District of Missouri, presiding.

2. Shigemura was acquitted by the jury of the Count II charge of stealing goods from an interstate shipment. The same Count II charge against Morley was dismissed by the court.

Morley was acquitted by the jury of the Count I conspiracy charge.

Shigemura was sentenced to five years on Count I and ten years on Count III, to run concurrently. Morley was ordered to undergo a study under 18 U.S.C. § 4205(c) & (d) and the execution of the sentence was stayed pending appeal.

Roy Hoffman was also listed in the Shigemura-Morley indictment. However, Hoffman was a fugitive at the time of trial and was not before the court.

Mask drove it back to the Norman Lines terminal in St. Louis. Normally, the truck would be held and maintained in the terminal until Sunday evening when it would be driven to the prearranged destination for delivery. However, on Saturday evening, February 21, 1981, John Mask drove the truck from the St. Louis terminal to a secluded area in Jefferson County, Missouri. There Mask, along with Roy Hoffman and Tim Rutledge, unloaded approximately 20,000 pounds of meat into a Ryder Rental Truck. Hoffman and Rutledge drove Hoffman's car out of the area and Mask, driving the Ryder truck, followed them to a Vicker's service station in South St. Louis.

Defendant Shigemura arrived at the Vickers station and instructed the others to follow him. Shigemura led the group to defendant Morley's house and Mask backed the Ryder truck into the driveway of the house. Shigemura told the group that it would take him a couple of days to get the money together for the meat. When Mask, Hoffman and Rutledge left the house in the early morning hours of Sunday, February 22, 1981, the Ryder truck containing the meat was still in the driveway.

On Sunday, February 22, 1981, defendant Morley called her friend Rita Blech and asked her if Rita's two sons would help her move some furniture. The boys and one of their friends agreed to help; however, instead of moving furniture, defendant Shigemura directed them to help him move the meat from the Ryder truck to Morley's basement. Shigemura also directed the boys to help him remove the identifying Schneider Packing meat tags which had been placed on each piece of meat. Shigemura paid the boys for their help and told them that he was going to open up a butcher shop and that the meat was for sale at $1.00 a pound.

During the week of February 22, 1981, one of defendant Morley's neighbors observed large wrapped items being carried from the house. On Thursday, February 26, 1981, the St. Louis Police Department received an anonymous telephone call regarding the activities at the Morley residence. The caller told the police that a Ryder Rental Truck had arrived at the Morley residence around 3:00 a. m. Sunday morning and that large, unknown items were carried into the basement for several hours. Additionally, the caller stated that several trucks and vehicles had come to the house and people were carrying unknown objects out of the basement and leaving with them.

St. Louis Police Detective Joseph Mokwa went to defendant Morley's residence in an undercover capacity to pose as a buyer of the large, unknown items observed by the anonymous caller. When defendant Morley answered the door, Detective Mokwa told her that Eddie [Shigemura] had sent him to see the stuff in the basement. Morley directed Mokwa to the basement door. Mokwa saw the large pieces of partially decayed meat scattered on the basement floor and found one Schneider Packing meat tag. After leaving the basement, Mokwa found Morley in the living room and asked her the price of the meat. She told him that he would have to see Shigemura because she was no longer sure. Mokwa then arrested Morley. The meat tag was seized and photographs were taken of the meat in the basement before the meat was disposed of later that evening.

After a four-day trial, the case was argued and submitted to the jury. The jury returned verdicts of guilty against both defendants, as described earlier, and the district court entered judgments on those verdicts.

## II. NO. 81–2146 EDWARD SHIGEMURA

### A. Addict-Informant Instruction

■ Shigemura argues that the district court erred in failing to give his requested addict-informant instruction.[3] This circuit

---

3. Shigemura's proposed instruction stated:
The testimony of a witness who provides evidence against a defendant in return for the Government's dropping of certain charges against him, must be examined and weighed by the jury with greater care than the testi-

has not adopted a *per se* rule regarding addict-informant instructions. Instead, our rule is that "the circumstances of each case determine the need for an addict-informant instruction." *United States v. Hoppe*, 645 F.2d 630, 633 (8th Cir.), *cert. denied*, 454 U.S. 849, 102 S.Ct. 170, 70 L.Ed.2d 138 (1981). In *Hoppe*, the court suggested four factors which might obviate the need for such an instruction. Our analysis of those factors leads us to the conclusion that the district court did not err in rejecting defendant Shigemura's proffered instruction.

One factor listed by the *Hoppe* court was a dispute as to whether the informant is actually an addict. *Id.* Shigemura argues that there was no dispute while the government contends that addiction was not established. Both parties agree that addiction at the time of trial testimony needs to be established as the predicate for the instruction and not addiction at some past time. *See United States v. Gregorio*, 497 F.2d 1253 (4th Cir.), *cert. denied*, 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974). The transcript of the proceedings is somewhat equivocal on this point.[4] However, present addiction is not clearly established. Even assuming that "desire" is equal to addiction, Mask's responses indicate that his desire for the drug was at the time of the crime rather than at the time of trial.

The second factor mentioned by the *Hoppe* court is cross-examination concerning the informant's addiction. *United States v. Hoppe, supra,* 645 F.2d at 633. Shigemura argues that although there was some cross-examination of Mask regarding his addiction, the subject was not thoroughly explored because of the trial court's *sua sponte* limitation upon his cross-examination. However, a review of the record shows that Shigemura's attorney asked several questions directly related to the key element of present addiction immediately

mony of an ordinary witness. The jury must determine whether such a witness' testimony has been affected by interest, or by prejudice against the defendant.

If such a witness is also a narcotics addict, there are additional reasons why his testimony should be considered with great care. An addict has a constant need for a supply of drugs and for money to support his habit, and also may have abnormal fear of imprisonment in which his supply of drugs might be cut off. These are special circumstances which you may consider in weighing testimony of this kind. You, of course, may give the testimony such weight as you think proper, after considering all relevant circumstances.

4. The testimony at trial was as follows:

[Mr. Cole]: Mr. Mask, you did indicate that when you met with Roy Hoffman on Friday, February 20th, that you all did some dope on that night, didn't you indicate that in your direct testimony?

[Mr. Mask]: Yes, I did.

[Mr. Cole]: What kind of dope did you do that night?

[Mr. Mask]: Preluden.

[Mr. Cole]: Preluden?

[Mr. Mask]: Yes.

[Mr. Cole]: Is it something that you inject into your veins?

[Mr. Mask]: Yes.

[Mr. Cole]: Is it something that you just do once an evening or do you have to do it every so many hours?

THE COURT: Excuse me, I don't think we'll go into the length and breadth and nature of drugs. I told you the area that you are entitled to inquire.

[Mr. Cole]: Mr. Mask, is it fair to say that you are addicted to Preluden or some other similar drug?

[Mr. Mask]: No. Preluden is not an addictive drug.

[Mr. Cole]: Are you addicted to any addictive drug, either psychologically or physically?

[Mr. Mask]: Preluden would be psychologically.

[Mr. Cole]: You are psychologically addicted to Preluden?

[Mr. Mask]: At the time I had a desire for Preluden, yes.

[Mr. Cole]: On the Saturday night, February 21, had you shot up any Preluden that day or that night?

[Mr. Mask]: That night, I did.

[Mr. Cole]: So you had done it on Friday night and on the Saturday night in question?

[Mr. Mask]: Yes.

[Mr. Cole]: Incidentally, you didn't go to bed Friday night at all, if I understand your testimony, is that correct?

[Mr. Mask]: No, I did not.

[Mr. Cole]: Have you been treated at Malcolm Bliss Hospital for drug addiction or any kind of mental disease?

[Mr. Mask]: No, I have not.

[Mr. Cole]: Have you ever been admitted to Malcolm Bliss?

[Mr. Mask]: No, I have not.

after the court's interruption.[5] In fact, the first question asked after the court's interruption was: "Mr. Mask, is it fair to say that you are addicted to Preluden or some other similar drug?" The fact that present addiction was not clearly established is attributable to the answers of Mr. Mask and not caused by any limiting action by the district court upon Shigemura's counsel's cross-examination.

■ The district court did allow considerable latitude in the cross-examination of Mask and the jury was well aware of his past use of Preluden, his past felony convictions and other character defects. Additionally, his plea bargain with the government was explored at length. Therefore, the issue of Mask's credibility was squarely before the jury and the court did not abuse its discretion in regulating the scope of cross-examination. Furthermore, even if some error exists in the district court's action, such error was harmless in light of the fact that both the third and fourth *Hoppe* factors are unquestionably present in this case.

The third item that the *Hoppe* court listed as a factor obviating the need for an addict-informant instruction is "an instruction alerting the jury that an informant's testimony should be viewed with care." *United States v. Hoppe, supra*, 645 F.2d at 633. The court gave a general instruction on scrutinizing and evaluating the credibility of each witness which included language cautioning the jury to consider a witness' "interest" in the case. The jury was in-structed that the testimony of an accomplice should be "received with caution and weighed with great care." The jury was aware of Mask's plea bargain with the government and the court instructed that the testimony of an accomplice who testifies for personal advantage must be examined more carefully than the testimony of an ordinary witness. The jury was specifically instructed to determine whether the testimony of an accomplice testifying for personal advantage was affected by self interest and by prejudice against the defendant. Additionally, Mask had testified regarding his prior felony convictions and the court instructed that felony convictions could discredit or impeach a witness and that they should consider such convictions in evaluating credibility. Therefore, the jury was sufficiently instructed on matters involving Mask's credibility.

■ The final *Hoppe* factor is whether there is corroboration of the informant's testimony. *Id.* A careful review of the record reveals extensive and detailed corroboration of Mask's testimony. In sum, we are satisfied that the court's instructions relating to Mask's credibility were sufficient for the purposes of a fair trial and that the failure to give the addict-informant instruction does not require reversal.

**B. Position Instruction**

■ Shigemura's next argument is that the district court erred in refusing to give his proffered position instruction.[6]

5. *See* n.4 *supra.*

6. Shigemura's proposed instruction stated:
Defendant Shigemura has pleaded "not guilty" to the three charges contained in the indictment against him. This plea puts into issue each and every one of the essential elements of these three charges. In order to prove any of these charges, the Government must establish each element of that particular charge beyond a reasonable doubt.
In particular, Defendant Shigemura's position is that the Government has failed to offer proof beyond a reasonable doubt of certain key elements of each of the three offenses charged.
The first offense charged is conspiracy to steal and possess stolen meat. One of the essential elements of conspiracy is that defendant Edward Shigemura wilfully became a member of the conspiracy, which means he knowingly made an agreement to accomplish an unlawful plan. In determining whether Edward Shigemura was a member of such a conspiracy, the jury must consider only Edward Shigemura's acts and statements. Defendant Shigemura's position is that the Government has not proven beyond a reasonable doubt that he wilfully became a member of an illegal conspiracy. If the Government has not proven this element beyond a reasonable doubt you must return a verdict of "not guilty" on the conspiracy charge.
The second offense charged against Edward Shigemura is unlawful taking or carrying away of goods from an interstate shipment.

Shigemura concedes that he "is not entitled to a particularly worded instruction where the instructions given by the trial judge adequately and correctly cover the substance of the requested instruction." *United States v. Manning*, 618 F.2d 45, 48 (8th Cir. 1980). Our review must, therefore, determine whether the instructions, taken as a whole, adequately and correctly cover the substance of Shigemura's requested instruction. *See United States v. Brown*, 540 F.2d 364, 380–81 (8th Cir. 1976). In this review we must also be cognizant of the fact that the district court judge has wide discretion in determining the appropriate jury instructions. *Dranow v. United States*, 307 F.2d 545, 568 (8th Cir. 1962).

The first paragraph of the proposed instruction emphasizes the government's burden of proving each element of the offenses charged beyond a reasonable doubt. The district court correctly instructed on the burden of proof using a differently worded instruction offered by defendant Shigemura.[7]

Shigemura's proposed instruction next focuses on the element of Shigemura's willful membership in the conspiracy.[8] That element was likewise correctly covered in the instructions given by the district court.[9]

■ The last portion of Shigemura's *proffered instruction at issue here* [10] concerns the knowledge element on the possession count. Shigemura contends that his instruction raised the defense his counsel argued in closing argument—that he had no knowledge that the meat was stolen. Counsel based this argument on the evidence that Mask, who delivered the meat to Shigemura, was the son of the owner of Norman Truck Lines and that meat can be salvaged when its transportation has been interrupted. Once again, the district court adequately and correctly charged the jury in its instructions. The jury was instructed that:

> Actual knowledge of the stolen nature of the beef is an essential element of the offense charged in Count III.
>
> You may not find either Defendant guilty unless you find beyond a reasonable doubt that such defendant knew that the beef in question had been stolen.
>
> It is not sufficient to show that the defendant may have suspected or thought that the beef was stolen.

Therefore, the district court's refusal of Shigemura's position instruction, as framed, was not an abuse of discretion and the court's instructions fully advised the jury of

One of the essential elements of this charge is that Edward Shigemura acted "unlawfully" in this regard. To do something "unlawfully" means to do "voluntarily and intentionally, and with the specific intent to do something the law forbids..." Defendant Shigemura's position is that the Government has not proven beyond a reasonable doubt that he acted with the specific intent to do something the law forbids. If the Government has not proven this element beyond a reasonable doubt, you must return a verdict of "not guilty" on the charge of stealing.

Finally, the third offense charged against Edward Shigemura is possession of goods stolen from an interstate shipment. One of the essential elements of this charge is that the defendant actually knew the goods were stolen at the time he possessed them. Defendant Shigemura's position is that the Government has not proven beyond a reasonable doubt that he knew the goods in question were stolen. If the Government has not proven this element beyond a reasonable doubt, you must return a verdict of "not

guilty" on the charge of possession of stolen goods.

7. The jury was instructed that:

Unless the Government proves beyond a reasonable doubt that the defendant has committed every element of the offense with which he is charged, you must find him not guilty.

8. The parties concede that the court made the finding required by *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir. 1978). *See United States v. Miller*, 644 F.2d 1241, 1244 (8th Cir. 1981).

9. The jury was instructed that:

In determining whether a particular defendant was a member of a conspiracy, if any, the jury should consider only his acts and statements.

10. Since Shigemura was acquitted on the Count II charge, the portion of the proposed instruction dealing with that count is not in issue.

its duty under the applicable law of the case.

### C. Membership in Conspiracy

Shigemura argues that the following instruction misstates the law.

Statements knowingly made and acts knowingly done by a defendant's co-conspirators may be considered by the jury as evidence pertaining to the defendant, even though the statements and acts may have occurred in the absence and without the knowledge of the defendant.

This is true even if such act or statement was made before the defendant had joined the conspiracy, for a person who knowingly and willfully joins an existing conspiracy is responsible for all of the conduct of the co-conspirators since the beginning of the conspiracy. The jury should keep in mind that such statements and acts are to be received with caution and weighed with great care.

Shigemura's proposed instruction utilized exactly the same language but added a sentence on the end stating: "The jury should further remember that in determining whether a particular defendant was a member of the conspiracy, the jury should consider only his acts and statements." Shigemura contends that this tail language was necessary because the language "as evidence pertaining to the defendant" authorizes the jury to consider hearsay statements of co-conspirators as evidence of his membership in the conspiracy.

■ However, in viewing the instructions as a whole, as we are required to do, we find no abuse of discretion by the trial court. The additional language urged by Shigemura appears not only once, but twice in the court's instructions to the jury and the lack of a third recitation was not prejudicial to Shigemura. In the instructions discussing membership in a conspiracy, the jury was charged:

In determining whether a conspiracy existed, the jury should consider the actions and declarations of all of the alleged participants. However, in determining whether a particular defendant was a member of a conspiracy, if any, the jury should consider only his acts and statements. He cannot be bound by the acts or declarations of other participants until it is established that a conspiracy existed and that he was one of its members.

\* \* \* \* \* \*

In determining whether a particular defendant was a member of a conspiracy, if any, the jury should consider only his acts and statements.

The jury was correctly instructed as to the appropriate evidence it could use in determining Shigemura's membership in the conspiracy and the disputed instruction is an accurate statement of the law of conspiracy.[11] See United States v. Burchinal, 657 F.2d 985, 990 (8th Cir.), cert. denied, 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981); United States v. Kirk, 534 F.2d 1262, 1271–72 (8th Cir. 1976), cert. denied, 430 U.S. 906, 97 S.Ct. 1174, 51 L.Ed.2d 581, 433 U.S. 907, 97 S.Ct. 2971, 53 L.Ed.2d 1091 (1977); United States v. Overshon, 494 F.2d 894, 896 (8th Cir.), cert. denied, 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974).

### III. NO. 81–2147 BONNIE MORLEY

■ Defendant Morley contends that the court erred in allowing into evidence the Schneider Meat Packing tag and the photographs of meat in her basement because Mokwa's entry by ruse vitiated her consent. She argues that such evidence was the fruit of an illegal, warrantless search and should have been suppressed. Morley filed timely motions to suppress this evidence and the motions were referred to a United States magistrate. After a hearing,

---

11. Shigemura's argument that his acquittal on the stealing count collaterally estops his conviction on the conspiracy and possession counts is frivolous and without merit. The commission of a substantive offense and a conspiracy to commit that offense are two separate and distinct crimes. United States v. Skillman, 442 F.2d 542, 548 (8th Cir.), cert. denied, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971). See also United States v. Anderson, 654 F.2d 1264, 1269 (8th Cir. 1981), cert. denied, —— U.S. ——, 102 S.Ct. 978, 71 L.Ed.2d 115 (1981), —— U.S. ——, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982).

the magistrate denied Morley's motions and the district court adopted the magistrate's findings. We are convinced that the lower court's determination was not clearly erroneous. *See United States v. Williams*, 604 F.2d 1102, 1121 (8th Cir. 1979).

 An undercover police officer's entry by consent, though obtained by deception, is not prohibited by the Fourth Amendment. *Lewis v. United States*, 385 U.S. 206, 210–12, 87 S.Ct. 424, 427–28, 17 L.Ed.2d 312 (1966); *United States v. Wright*, 641 F.2d 602, 604–05 (8th Cir.), *cert. denied*, 451 U.S. 1021, 101 S.Ct. 3014, 69 L.Ed.2d 394 (1981); *United States v. Collins*, 652 F.2d 735, 739 (8th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982). Morley, who consented to Detective Mokwa's entry into her house and directed him to the basement, has no legally enforceable expectation that Mokwa is not an undercover police officer. Detective Mokwa may accept an invitation to do business and enter for the very purposes contemplated by Morley. *See Lewis v. United States, supra*, 385 U.S. at 211, 87 S.Ct. 424 at 427.

 Morley's reliance upon *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), is misplaced. In *Payton*, the Court held that "the Fourth Amendment * * * prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Id.* at 576, 100 S.Ct. at 1375. *Payton* is inapplicable because the Court in *Payton* held that the warrantless entry at issue was made without the consent of any occupant. Morley, however, consented to Detective Mokwa's entry. The case is also distinguishable because Detective Mokwa's entry was not made for the purposes of a routine felony arrest. He entered to purchase "the stuff" in the basement. *See United States v. Collins, supra*, 652 F.2d at 739. Morley had converted her home into a commercial center where unlawful business was transacted; therefore, her home was not entitled to greater sanctity than other places of business. *See Lewis v. United States, supra*,

385 U.S. at 211, 87 S.Ct. at 427. No warrant was needed to enter Morley's house.

 Seizing the meat tag and photographing the meat before removing it from the basement were proper under the plain view doctrine. *See Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). That doctrine requires that the initial intrusion was lawful; that the discovery of the evidence was inadvertent; and that the incriminating nature of the evidence was immediately apparent. *United ed States v. Wright, supra*, 641 F.2d at 605. Detective Mokwa's intrusion was lawful since Morley consented to his entry. Second, the discovery was inadvertent since before Detective Mokwa entered the basement he had no more than a suspicion that the stolen beef was there. The anonymous informant had been unable to identify the objects being carried from the residence. Third, the incriminating nature of the big sides of rotting beef and of the meat tag was immediately apparent.

We reject Morley's argument that as of the afternoon of February 26, the police had enough information to support a probable cause finding for a search warrant. As the Supreme Court stated in *Hoffa v. United States*, 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374 (1966):

> The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.

We are satisfied that both defendants received a fair trial and that their convictions should be affirmed.

Affirmed.