UNITED STATES of America, Appellee,

v.

Robert DEMPEWOLF, Appellant.

UNITED STATES of America, Appellee,

v.

Ronald Allan EICHENGER, Appellant.

Nos. 86–1764, 86–1783.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 17, 1987.

Decided May 6, 1987.

Rehearing and Rehearing En Banc Denied in No. 86–1764 July 1, 1987.

---

Jack A. Faith, Sioux City, Iowa, for appellant Dempewolf.

Richard L. McCoy, Sioux City, Iowa, for appellant Eichenger.

Richard L. Murphy, Asst. U.S. Atty., Cedar Rapids, Iowa, for appellee.

Before McMILLIAN, JOHN R. GIBSON and WOLLMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Robert Dempewolf and Ronald Allan Eichenger appeal from their convictions on charges of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846, and Dempewolf's conviction of possession with intent to distribute cocaine and related substantive offenses. For reversal, both argue

that the district court [1] erred by 1) limiting their cross-examination of a government witness in violation of their sixth amendment confrontation rights; 2) failing to give the jury an addict-informer instruction about the government's major witness; and 3) admitting certain evidence. Dempewolf also argues that the district court should have granted his motion for severance. Eichenger argues that the evidence was insufficient to support the jury's verdict against him. We affirm.

On October 11, 1985, Pamela Luke, Michael Blum, and Thomas Post attempted to sell about twelve ounces of cocaine to Timothy Shannon, an agent of the Iowa Department of Criminal Investigation in Sioux City, Iowa. Pamela Luke was arrested and later agreed to cooperate. She told Shannon that William Mogenson was her source, and that he was waiting in a South Sioux City, Nebraska motel for her to bring about $27,000 to pay for the cocaine. At Agent Shannon's request, Luke called Mogenson to say that she needed a ride to his motel. Mogenson sent Ronald Eichenger to get her, and Eichenger was arrested when he arrived in Mogenson's car at the Seven-Eleven store where Luke was waiting. With the help of Nebraska police, Mogenson was arrested in his motel room, and he implicated other defendants, including Dempewolf, whom Mogenson identified as his source for the cocaine. Dempewolf was arrested in Omaha, Nebraska when he went to a Chinese restaurant at which Mogenson said the two were supposed to meet in order for him to pay Dempewolf for the cocaine.

Mogenson pled guilty to one count, unlawful distribution of cocaine, with the understanding that if he testified the other counts would be dismissed. At trial, Mogenson was the government's chief witness; his testimony was crucial in convicting the other defendants. Before Mogenson testified, the defense attorneys questioned him out of the jury's presence about his dealings with other defendants before the October 11 transaction. The voir dire

gave the defense attorneys an opportunity to find out what Mogenson was going to say about his "book"—some rather cryptic notes he had made about who owed him what—and thus, give them a better chance to object before the jury heard prejudicial information. After the jury was allowed to return, Mogenson testified that "Ron" and "RE" in these notes referred to Ronald Eichenger, who he said had bought cocaine from him a couple of times during the period June 1 to October 11, 1985. Mogenson also said that in August, Dempewolf had delivered a pound of cocaine to him at Eichenger's apartment in Denver, and that Eichenger saw the delivery, knew what was going on, and made two half-ounce purchases from that shipment.

The jury was given special verdict forms for the conspiracy count. The jury found that Dempewolf intended to distribute more than one kilogram of cocaine, but that Eichenger intended to distribute less than one kilogram.

## I.

Both appellants argue that their sixth amendment confrontation rights were violated by the court's limitation on their cross-examination of William Mogenson. Mogenson's testimony outside the presence of the jury differed in some details from his testimony in their presence: the approximate dates he gave for earlier drug deals within the June to September time period were not the same, and there was a difference of two ounces in the amount of cocaine he said Pam Luke took. Dempewolf's counsel asked to cross-examine him on these discrepancies, but the court would not permit it because it did not want the jury to know that Mogenson had testified outside their presence. However, all three defense attorneys extensively cross-examined Mogenson, and they were not restricted in their attempt to impeach him on the basis of prior inconsistent statements he

1. The Honorable Donald E. O'Brien, United States District Judge for the Northern District of Iowa.

had made about the same matters to a Drug Enforcement Administration officer.

■■■ A defendant shows a violation of his confrontation clause rights if he proves that he was prevented from exposing facts to the jury from which they could reasonably make inferences about the reliability of the witness. *Delaware v. Van Arsdall,* — U.S. —, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986); *Davis v. Alaska,* 415 U.S. 308, 318, 94 S.Ct. 1105, 1111, 39 L.Ed.2d 347 (1974); *United States v. Gregory,* 808 F.2d 679, 680–81 (8th Cir.1987). The availability of other opportunities during cross-examination to elicit the same information is significant in determining whether a defendant's sixth amendment rights have been violated. *United States v. Wilson,* 787 F.2d 375, 386–87 (8th Cir.), *cert. denied,* — U.S. —, —, 107 S.Ct. 197, 223, 93 L.Ed.2d 129, 151 (1986). In this case, the jury was exposed to repeated attacks on Mogenson's credibility; they were made aware of his prior inconsistent statements, his plea agreement, and his possible addiction to cocaine. Mogenson admitted that he lied when testifying and told the jury that he was sorry that he got Eichenger involved in the case. The jury's ability to judge Mogenson's reliability was not significantly reduced and the defendants' confrontation rights were not violated. Thus, the requested cross-examination would merely have provided a second opportunity for impeachment by prior inconsistent statements. The district court acted within its discretion in limiting cross-examination. *See United States v. Lee,* 743 F.2d 1240, 1249 (8th Cir.1984).[2]

## II.

Both appellants claim that Mogenson was a cocaine addict and argue that the district court erred in refusing to give an "addict-informer" instruction to the jury.

■■■ This circuit has not adopted the rule that an addict-informer instruction must be given if requested; instead it depends on the circumstances of each case. *United States v. Broyles,* 764 F.2d 525, 527 (8th Cir.1985) (per curiam); *United States v. Hoppe,* 645 F.2d 630, 633 (8th Cir.), *cert. denied,* 454 U.S. 849, 102 S.Ct. 170, 70 L.Ed.2d 138 (1981). Four factors may make an addict-informer instruction unnecessary: "a dispute as to whether the informant is actually an addict; cross-examination concerning the informant's addiction; an instruction alerting the jury that an informant's testimony should be viewed with care; and corroboration of the informant's testimony." *Hoppe,* 645 F.2d at 633 (citations omitted). Although all four factors were present in both *Broyles* and *Hoppe,* the rule does not require that all four be shown. In this case, there was some dispute over whether Mogenson was an addict.[3] In addition, the court permitted cross-examination about Mogenson's addiction and instructed the jury that Mogenson and two other witnesses had made plea bargains with the government and that "you should * * * consider their testimony with greater caution and care than that of an ordinary witness." Jury Instruction 14, Designated Record at 106. Finally, although not all of Mogenson's testimony was corroborated, some of it was reinforced by the testimony of other government witnesses and by documentary evidence. We conclude that the district court did not err in refusing to give an "addict-informer" instruction.

## III.

■■■ Both defendants also claim error in the court's admission of certain evidence. Dempewolf objects to the government questioning him about his association with

---

**2.** The Supreme Court in *Van Arsdall, supra,* held that even when a trial court errs in limiting cross-examination on the subject of witness bias, the violation is subject to harmless-error analysis. 106 S.Ct. at 1438. If there was an error here, it was harmless beyond a reasonable doubt.

**3.** In considering whether to give this instruction, the trial judge noted that the informer must be an addict at the time of trial, not at the

time of the crime. *United States v. Shigemura,* 682 F.2d 699, 702 (8th Cir.1982), *cert. denied,* 459 U.S. 1111, 103 S.Ct. 741, 74 L.Ed.2d 962 (1983). Mogenson admitted that he had in the past used cocaine heavily, and may have been psychologically dependent on it, but said that he had not had any since his arrest. The judge commented that he did not act like an addict at the trial.

a convicted drug dealer who was not indicted in this case. The government pursued this line of questioning to impeach Dempewolf's testimony that he did not associate with drug dealers. Dempewolf also argues that admitting photocopies of the $720 in cash found on him at the time of his arrest was an abuse of discretion because it was highly prejudicial and without probative value. Likewise, Eichenger argues that testimony about his prior purchases of cocaine from Mogenson was highly prejudicial and not relevant to the crime charged. We find the defendants' arguments unpersuasive and conclude that, in each instance, the district court acted within its broad discretion in admitting the evidence.

## IV.

■ Dempewolf also argues that it was error for the trial court to deny his motion for severance. The general rule is that persons charged in a conspiracy should be tried together. *See, e.g., United States v. DeLuna,* 763 F.2d 897, 919 (8th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985). Severance motions are a matter for the discretion of the trial court, and denial of such motions will not be reversed without a showing of both an abuse of discretion and clear prejudice to the defendant. *Id.* at 919. The court instructed the jurors to consider the evidence about each defendant separately, and they appear to have been able to compartmentalize the evidence relating to individual defendants. *See id.* at 920. Also, because Dempewolf was charged with conspiracy, much of the evidence relating to the co-conspirators would have been admissible even in a separate trial. Dempewolf has not succeeded in showing "clear" prejudice.

## V.

Eichenger also argues that his motion for acquittal should have been granted because the evidence against him was insufficient to support the jury verdict. "In reviewing a denial of a motion for a judgment of acquittal, we must view the evidence in the light most favorable to the government and must give the government the benefit of all reasonable inferences that

may logically be drawn from the evidence." *DeLuna,* 763 F.2d at 924. Once it has been established that a conspiracy exists, even slight evidence connecting a particular defendant to the conspiracy may be sufficient to show his involvement. *United States v. Garcia,* 785 F.2d 214, 225 (8th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986); *DeLuna,* 763 F.2d at 924.

■ Appellant argues that the evidence shows only that Eichenger associated with the members of the conspiracy, and that Mogenson testified that Eichenger was not really involved, that he was only driving Mogenson's car and babysitting for his dog. At more than one point in the trial, however, Mogenson testified that Eichenger knew what was going on and that once during the summer Dempewolf had brought some cocaine to Denver and delivered it to Mogenson at Eichenger's apartment in the presence of Eichenger and another person. There was evidence that Eichenger kept a list of his expenses while driving from Denver to Omaha, and evidence of phone calls between Mogenson and Eichenger when Mogenson was in South Sioux City and Eichenger was waiting in Omaha. If the jury believed Mogenson, as they apparently did, there was enough evidence for them to infer that Eichenger agreed to participate in the conspiracy by helping with the driving. There was evidence that Eichenger knew that Mogenson was going to Florida to get cocaine, and that Eichenger could get some after the deals in Sioux City were finished and the two returned to Denver. Officer Patrick Fleming, the Sioux City police officer who arrested Eichenger, testified that Eichenger gave him an oral statement that indicated that he knew there was a quantity of cocaine in Mogenson's motel room, and that he had come to pick up Pam Luke so that she could pay Mogenson for the cocaine, and that he was being paid expenses plus "a couple $100" for coming to Iowa from Denver to assist Mogenson. Although his involvement in the conspiracy was not as great as that of his co-defendants, we view the evidence in the light most favorable to the government, and there was enough for the jury to infer that Ei-

chenger "knowingly and wilfully" participated in the conspiracy.

 Finally, Eichenger argues that the verdict should be overturned because the jury's finding that he intended to distribute less than a kilogram of cocaine was logically inconsistent with their findings that the other two defendants intended to distribute one kilogram or more. Inconsistent jury verdicts are not grounds for reversal. *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932); *United States v. Bear Ribs,* 722 F.2d 420, 424 (8th Cir.1983); *United States v. Benfield,* 593 F.2d 815, 822 (8th Cir.1979). In addition, Eichenger did not object to the verdict forms at trial. When the assistant U.S. Attorney asked for a change that would have made inconsistent verdicts impossible, the defense lawyers argued against it.

The judgments of conviction are affirmed.