# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2227

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Reginald Stern Gardner, also known | * | |
| as Daniel Carl Sharpe, also known as | * | [UNPUBLISHED] |
| Black, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: December 13, 2004
Filed: July 11, 2005

_____

Before WOLLMAN, LAY, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Reginald Stern Gardner was found guilty by a jury of possession with intent to distribute cocaine base, cocaine, and marijuana, in violation of 21 U.S.C. § 841(a)(1). Because Gardner had sustained two prior felony convictions for controlled substance offenses, the district court[1] sentenced Gardner as a career

_____

[1]The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa, sitting by designation.

offender pursuant to USSG § 4B1.1, and imposed a term of 360 months' imprisonment. We affirm.

In the spring of 2003, police obtained information that drugs were being sold from an apartment at 404 Second Street N.W. in Mason City, Iowa. Police conducted surveillance and determined that there was heavy foot traffic going in and out of the apartment, a circumstance consistent with drug dealing. In June of 2003, police arrested Jennifer Boggess on unrelated theft charges. With hopes of receiving favorable treatment, Boggess told the police that she had obtained cocaine and cocaine base from an individual at the Second Street apartment on several occasions, including earlier that day. The police then obtained a warrant to search the apartment.

While executing the search warrant, the police found Gardner in the residence, and they seized a small amount of marijuana and approximately $500 in cash from Gardner's person. A search of the apartment turned up 23 grams of marijuana prepackaged in twenty-three small bags, 122.65 grams of cocaine, and 9.98 grams of cocaine base. The prepackaged marijuana was discovered in the back bedroom where Gardner and three others were apprehended. The cocaine and cocaine base were discovered in a food container hidden in the kitchen. Additionally, police seized scales, drug packaging materials, and other drug paraphernalia. At the time of his arrest, Gardner gave the police a false name and produced false identification.

At trial, Gardner's theory of defense was that he was at the apartment that evening to buy drugs, not to sell drugs. Gardner further argued that there was insufficient evidence directly linking him to the larger distribution quantities of drugs. Boggess reluctantly testified that she had purchased drugs at the apartment from Gardner and from others. Another witness, Katy Warren, testified that she had observed Gardner selling cocaine and cocaine base from the apartment in June 2003. To prove Gardner's knowledge and intent to distribute, the government also

introduced evidence of Gardner's two prior convictions for drug distribution pursuant to Federal Rule of Evidence 404(b).

On appeal, Gardner argues that the district court abused its discretion by: (1) allowing 404(b) evidence of his two prior convictions; (2) rejecting his requested jury instruction related to drug addicts; and (3) denying his motion for a judgment of acquittal and a new trial. Gardner further argues that his sentence is unconstitutional. We address each argument individually.

### 1.    *404(b) Evidence.*

Gardner argues that the district court abused its discretion by admitting evidence under Rule 404(b) that he was convicted in 1996 for sale of crack cocaine and in 1995 for possession with intent to distribute cocaine. We have held consistently that Rule 404(b) is a rule of inclusion. *United States v. O'Connell*, 841 F.2d 1408, 1422 (8th Cir. 1988). The government may introduce evidence of prior crimes if the evidence is: "1) relevant to a material issue; 2) similar in kind and not overly remote in time to the charged crime; 3) supported by sufficient evidence; and 4) such that its potential prejudice does not substantially outweigh its probative value." *United States v. Crenshaw*, 359 F.3d 977, 998 (8th Cir. 2004). We review the district court's decision to admit 404(b) evidence for abuse of discretion. *O'Connell*, 841 F.2d at 1422.

Gardner claims the two prior drug convictions had no relevance to whether he was at the apartment to sell drugs or merely to buy drugs. We disagree. Gardner's theory of defense was that he no longer lived at the apartment at the time of the search, and that he was there only to buy drugs, not to sell them. This defense put his intent at issue (*i.e.*, did he intend only to buy, and not to sell?), and Gardner's defense also challenged the government's position regarding his knowledge that drugs were at the apartment and prepackaged for resale.

Gardner's 1995 conviction was for possession with intent to distribute cocaine. At the time of that arrest, he provided a false name to police and was in possession of 57.9 grams of powder cocaine and 50.7 grams of crack cocaine. Gardner's 1996 conviction was for selling cocaine. At the time of that arrest, he provided a false name to police and was in possession of 10 grams of cocaine and $784. We agree with the government that this evidence is relevant in the instant case to establish that Gardner knew the drugs were in the residence, knew they were packaged for resale, and intended to sell drugs. Gardner's prior convictions were relevant to a material issue, similar in kind, not too remote in time, and supported by sufficient evidence. Unlike the 404(b) evidence in *Crenshaw*, the potential for unfair prejudice from the evidence in this case was not substantially outweighed by its probative value.

2.      *Drug Addict Jury Instruction.*

Gardner argues that the district court should have instructed the jury on specific reasons why a drug addict's testimony may lack credibility. We review the district court's choice of jury instructions for an abuse of discretion. *Campos v. City of Blue Springs*, 289 F.3d 546, 551 (8th Cir. 2002).

The district court is not obligated to provide a special addict-informant instruction. *United States v. Hoppe*, 645 F.2d 630, 633 (8th Cir. 1981). The presence of the following factors may obviate the need for an addict witness instruction: 1) a dispute as to whether the witness is actually an addict; 2) cross-examination concerning the witness' addiction; 3) an instruction alerting the jury to view the witness' testimony with care; and 4) corroboration of the witness' testimony. *Id.* "When reviewing a challenge to the jury instructions, we recognize that the district court has wide discretion in formulating the instructions and will affirm if the entire charge to the jury, when read as a whole, fairly and adequately contains the law applicable to the case." *United States v. Casas*, 999 F.2d 1225, 1230 (8th Cir. 1993).

Although it was under no obligation to do so, the district court gave the jury a special instruction regarding the credibility of the two informants. In Instruction 8, entitled "CREDIBILITY-DRUG ABUSER," the district court instructed the jury that it *must* examine the testimony of the two witnesses with greater care. Further, the district court allowed Gardner to cross-examine the witnesses regarding their addiction and their motive to cooperate with the government. The two witnesses corroborated each other's testimony.

After reviewing the jury instructions, we conclude that as a whole, they accurately reflected the law applicable to the case. Based on this record, we hold that the district court did not abuse its discretion by rejecting Gardner's preferred addict-informant instruction.

### 3. *Judgment of Acquittal and New Trial.*

Gardner appeals denial of his motions for a judgment of acquittal and a new trial. We address each claim individually.

In considering a motion for judgment of acquittal, the district court must deny the motion if, "after reviewing the evidence in the light most favorable to the government, substantial evidence justifies an inference of guilt, even if contrary evidence exists." *United States v. Harris*, 352 F.3d 362, 365 (8th Cir. 2003). A denial of a motion for judgment of acquittal will be reversed "only if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Gomez*, 165 F.3d 650, 654 (8th Cir. 1999). We review the district court's ruling on a motion for judgment of acquittal *de novo*. *Harris*, 352 F.3d at 365.

We conclude that substantial evidence supports the guilty verdict. The jury was presented with the physical evidence of the drugs seized at the apartment, the

testimony of two witnesses who saw Gardner sell drugs from the apartment, evidence of using a false identity and paying for the apartment in cash, and the 404(b) evidence of the two prior convictions for distribution of the same types of drugs. In his defense, Gardner produced evidence, through the testimony of his girlfriend, that he had moved out of the apartment prior to the search. Reviewing this evidence in the light most favorable to the government, we conclude that substantial evidence justifies the inference that Gardner was selling drugs from the apartment. Accordingly, we hold that the district court did not err when it denied Gardner's motion for judgment of acquittal.

Gardner fares no better on his motion for a new trial. The district court may grant a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). The district court has broad discretion to grant a new trial on the grounds that the verdict was contrary to the evidence. *United States v. Huerta-Orozco*, 272 F.3d 561, 565-66 (8th Cir. 2001). We will reverse the district court only for an abuse of discretion. *Id*. at 566. As we have already concluded, there was substantial evidence supporting the jury's guilty verdict. In the face of substantial evidence of Gardner's guilt, we hold that the district court did not abuse its discretion by denying the motion for a new trial.

### 4. *Sentencing Issues.*

Based on Gardner's two prior drug convictions, the district court determined that Gardner was a career offender for purposes of the sentencing guidelines, *see* USSG § 4B1.1, and sentenced him to a term of 360 months' imprisonment, which was the low end of the applicable guideline sentencing range of 360 months to life imprisonment. This sentence was to run consecutively to the 24-month term Gardner received in a revocation of supervised release in case MJ-04-55-JEG, which was transferred from the District of Minnesota.

For the first time on appeal, Gardner challenges the constitutionality of the sentencing guidelines. His claim in his appellate briefs and at oral argument was based upon *Blakely v. Washington*, 124 S. Ct. 2531 (2004). Since then, the Supreme Court decided *United States v. Booker*, 125 S. Ct. 738 (2005), which applied the principles of *Blakely* to the federal sentencing guidelines, and held that the guidelines are effectively advisory in all cases. Gardner argues the applicability of *Booker* in a letter filed pursuant to Federal Rule of Appellate Procedure 28(j).

Since Gardner did not object to the constitutionality or mandatory nature of the guidelines in the district court, we review his claim for plain error. *United States v. Pirani*, 406 F.3d 543, 550 (8th Cir. 2005). This case does not involve a violation of the Sixth Amendment, because the district court's application of the career offender provision of the guidelines was based on Gardner's prior convictions, and sentencing enhancements based on prior convictions are outside the rule of *Booker*. *See Booker*, 125 S. Ct. at 756; *United States v. Marcussen*, 403 F.3d 982, 984 (8th Cir. 2005). The district court did err by applying the guidelines as mandatory, however, and this error is now plain.

Upon review of the record as a whole, we conclude that the district court's error in applying the guidelines as mandatory did not affect Gardner's substantial rights. The record does not indicate a reasonable probability that Gardner's sentence would have been different had the district court applied the guidelines as advisory. *See Pirani*, 406 F.3d at 552. Although Gardner received a sentence at the low end of the recommended guideline range, this fact "is insufficient, without more, to demonstrate a reasonable probability that the court would have imposed a lesser sentence absent the *Booker* error." *Id*. at 553.

Gardner argues that certain statements made by the district court at sentencing suggest that it would have imposed a more favorable sentence under *Booker*. He points to such comments as "[f]rom what I've read about you, there's an individual

there that we ought to have back as a member of society, and you ought to have a chance to have a better future as time goes by," (S. Tr. at 19), and "there are a lot of contradictions in your case." (S. Tr. at 16). The court also noted, however, that "[i]n your past conduct you've gotten involved in some things that caused society a lot of trouble," and found that "a sentence at the bottom of the guideline range adequately affords deterrence of criminal conduct and protection of the public . . . [and] adequately addresses the issues in this case." (*Id.*). The record gives no firm indication what the district court might have done under an advisory system, and "where the effect of the error on the result in the district court is uncertain or indeterminate – where we would have to speculate – the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error." *Pirani*, 406 F.3d at 553 (internal quotation omitted).

The judgment of the district court is affirmed.

LAY, Circuit Judge, concurring.

I concur in the judgment of the court. I write separately to highlight the limited efficacy of an inflexible federal criminal justice policy that responds to the epidemic of drug crimes without adequately addressing the root cause of this epidemic – drug addiction. Many states have created specialized drug courts that approach this epidemic with much greater success. In most drug courts, nonviolent, substance-abusing offenders charged with drug-related crimes are channeled into judicially supervised substance abuse treatment, mandatory drugs testing, and other rehabilitative services in an effort to reduce recidivism. Eligible offenders typically have the charges against them stayed and dropped if treatment is successful, or plead guilty with prosecution deferred and criminal punishment withheld if treatment is successful. Evidence shows that the flexible and pro-active approach of drug courts reduces recidivism rates to less than half of the recidivism rate of those offenders who are simply imprisoned for their drug crimes. Unfortunately, the federal criminal

justice system offers no such alternatives for nonviolent, substance-abusing offenders. Given the tremendous economic and human costs of imprisoning nonviolent drug offenders, Congress should seriously consider creating federal drug courts. Federal drug courts would save a significant amount of money for taxpayers.

_____