## STATE OF CONNECTICUT *v.* MICHAEL A. WALKER (12841)

DUPONT, C. J., HEIMAN and FREEDMAN, Js.

Argued December 7, 1993—decision released March 22, 1994

*Lori Welch-Rubin,* special public defender, for the appellant (defendant).

*Marjorie Allen Dauster,* assistant state's attorney, with whom, on the brief, was *James Thomas,* state's attorney, for the appellee (state).

*Nancy Dart* and *Jennifer C. Jaff* filed a brief for the Connecticut Women's Education and Legal Fund et al. as amicus curiae.

DUPONT, C. J. The state charged the defendant with murder in violation of General Statutes § 53a-54a. The

jury, after twice deadlocking, found the defendant guilty of the charge. The defendant appeals from the judgment of conviction, alleging that (1) the trial court's instructions given prior to voir dire violated the defendant's constitutional rights, (2) the trial court's "Chip Smith" jury charge pursuant to *State* v. *Smith,* 49 Conn. 376 (1881), violated the defendant's constitutional rights, and (3) the evidence presented at trial was not sufficient to sustain the conviction.

The victim, Sylvester Meade, was shot and killed outside the Blue Hills Cafe in Hartford. Four witnesses identified the defendant as the person who shot the victim. Terry Meade, the victim's niece, testified that she saw the shooting while standing next to a car in front of the cafe, and saw the shooter run toward Adams Street in Hartford. She recognized the gunman as the defendant, but, because she was afraid of the defendant, did not immediately identify him to the police, and instead gave the police a deliberately inaccurate description of the shooter.

Lee Baskerville testified that he saw the defendant, whom he had seen before, fire shots at the victim and then run toward Adams Street. Baskerville identified the defendant as the gunman from a photographic array, and also identified the defendant at trial.

Geraldine Conners testified that she heard gun shots while in her first floor apartment at 1347 Albany Avenue. She looked out a window and saw, in a well lit area, someone running from Albany Avenue toward Adams Street. About one year later, Conners selected a photograph of the defendant from a photographic array after viewing the array in her apartment. The following day, she again picked a photograph of the defendant from a photographic array, and gave a written statement to the police. At trial, Conners was not able to identify the defendant.

Diane Sims, Conner's daughter, testified that she heard gun shots while in her second floor apartment at 1347 Albany Avenue. She looked out a window, and saw someone running through a vacant lot toward Adams Street. About one year after the shooting, when her mother was being shown the photographic array in her apartment, Sims entered the bedroom where the photographs were laid out on the bed. At that time, she told the police that she had seen someone the night of the shooting. The police asked her to look at the array, and she selected a photograph of the defendant. At trial, she was not able to identify the defendant.

Three witnesses testified that the defendant was not the shooter. Eddie Gant testified that he witnessed the shooting from a distance of twenty feet. He stated that the shooter had light skin and curly hair, and that he had never before seen the person. He also testified that he knew the defendant, and would have recognized him if he had been the gunman. Prior to his in-court testimony, Gant had told a police officer that he had not seen the shooting.

Burness Wallace and Lillian Threet both testified that at the time of the shooting they were together in a car across the street from the victim's car, and that the gunman had light skin. They also testified that they knew the defendant, and that they were sure the defendant was not the gunman. They both acknowledged that, although they knew that the defendant had been charged with the crime, they did not go to the police with their account.

At the time of the shooting, the defendant was in the custody of the department of correction, and living in the Watkinson halfway house as part of a work release program. The halfway house is approximately one mile from the cafe. On the evening of the crime, which occurred between 12:45 and 1 a.m., the defendant had left the house on an authorized furlough and was not

there at 10 p.m., but was present at midnight and at 2 a.m. for facility head counts. The log indicated that the defendant had also signed out at about 11 p.m., and had returned about twenty minutes later, although he failed to sign in.

The defendant was assigned to room twenty-six on the second floor of the house. The whereabouts of those assigned to the house were monitored, most notably by means of a head count at two hour intervals. In order to leave or enter the facility after midnight, a resident had to check in with a counselor. Windows on the first floor were locked, but windows on the second and third floors were not. Residents were not confined to their rooms at night.

The facility had had security problems. First floor windows, which residents had access to, had been found unlocked, and other windows had been broken. A drainpipe that ran down from the room adjacent to the window of the defendant's room had been pulled away from the building. A counselor at the facility testified that a resident could get out of the facility undetected between midnight and 2 a.m. Another counselor testified that it was possible to get back into the facility undetected.

I

The defendant claims that the trial court's preliminary instructions to two separate panels of prospective jurors violated his state and federal constitutional rights to due process of law and to a fair trial by diminishing the state's burden of proof.[1] Although the defendant did not object to the instructions at trial, he seeks to prevail under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).

---

[1] The defendant has made no separate analysis of his claim under Connecticut constitutional law, and we choose not to review the claim. See *State* v. *Andrews,* 33 Conn. App. 590, 592 n.3, 637 A.2d 787 (1994), and the cases cited therein.

On March 6 and 7, 1989, the trial court gave preliminary instructions to venire persons regarding general principles of criminal law. On March 6, during its instruction regarding the standard of proof beyond a reasonable doubt, the court stated that "you may not use your woman's intuition to determine reasonable doubt."[2] On March 7, the trial court instructed a second panel of prospective jurors that a woman "may not use her woman's intuition to determine reasonable doubt." All of the jurors who served on the defendant's jury were present during either the March 6 or March 7 preliminary instructions.

---

[2] The trial court's preliminary instructions regarding proof beyond a reasonable doubt on March 6, 1989, included the following: "The legal standard of proof in a criminal case is proof beyond a reasonable doubt. And I emphasize the word reasonable, because you must draw the doubt by the method of rationality, mental process of reason from the evidence or the lack of evidence. . . . That means that you do have to exclude certain things that—or certain procedures that govern the ordinary course of your lives when you're making a determination of—as to what your conduct will be. You know, women, of course, if you ask them well, why did they do certain things or why did they do it now, or why did they do it in the way they did it, if the woman's only answer is my woman's intuition told me it was the proper thing to do, or the proper time to do it, or the proper way to do it, then you may not use your woman's intuition to determine reasonable doubt, or facts or issues in a criminal case. Likewise, many of us bid on a lottery each week by using numbers from our birthdays, our telephone numbers, our license plate, our addresses. . . . Even if we win, you can't look back and say that's been done by a rational process or by the mental process of reason. It was a hunch, a guess. You cannot use hunches and guesses to determine reasonable doubt. Or facts or issues in a criminal case. Likewise, there's a slang expression, I have a gut feeling that such and such is happening. You may not use gut feelings to determine reasonable doubt. Likewise, there are other biological symptoms that do raise doubts in our minds. . . . Every time I have an itchy elbow I think, well, maybe I should do that or maybe I shouldn't do it now or maybe I shouldn't do it in this way. But I can't look at my itchy elbow and say, well, that's based on a rationality or a mental process of reason. So you cannot use biological symptoms that may raise doubts in your mind if it's not based on reason."

The trial court's preliminary instructions on March 7, 1989, were essentially the same as the March 6 preliminary instructions.

On March 20, 1989, after the jury heard the case, the court gave the jurors their final instructions. This time, the court did not discuss "woman's intuition" in explaining the concept of proof beyond a reasonable doubt.[3] The defendant does not claim on appeal that the instructions given at the close of the case were improper. The defendant did not seek a curative instruction as to the preliminary instructions, either at the time they were given or when the final instructions were given.

After jury deliberations had begun, the trial court received two communications from the jury. The jurors informed the court that they could not reach a unanimous verdict, and that they wanted an explanation of the concept of reasonable doubt. At that time, the trial court restated the definition of reasonable doubt to the jurors. Several hours later, the jurors again notified the court that they could not come to a unanimous verdict. The court then instructed the jurors to reassess their positions in an effort to reach such a verdict.

Under *State* v. *Golding,* supra, 239–40, a defendant can prevail on an unpreserved claim of constitutional error "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of a constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to

---

[3] The trial court's final instructions on March 20, 1989, regarding proof beyond a reasonable doubt provided in pertinent part that: "Each element of the charge against the defendant must be proved by the state by proof beyond a reasonable doubt. . . . A reasonable doubt is not a slight doubt or a possible doubt, not a surmise, a guess or a conjecture. It doesn't arise from feelings of sympathy or pity . . . . A reasonable doubt is one which is found on the evidence and flows naturally from the evidence or the lack of evidence. It is, in short, a doubt based on reason."

demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.''

The first two conditions of *Golding* are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself. *Wilson* v. *Cohen,* 222 Conn. 591, 603, 610 A.2d 1177 (1992); *State* v. *Graham,* 33 Conn. 432, 442, 636 A.2d 852 (1994); see also *State* v. *Thurman,* 10 Conn. App. 302, 306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987). The first two conditions of *Golding* are met here because there is an adequate record for review, and a claim that a jury instruction diminishes the state's burden of proof is constitutional in nature. *State* v. *Walton,* 227 Conn. 32, 64–65, 630 A.2d 990 (1993). A defendant may prevail under the third prong of *Golding* on a claim of instructional error "only if, 'considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled.' '' Id., 65. The defendant claims that the jury was misled, and cites as corroboration of his claim the fact that the jury requested an explanation of reasonable doubt and was twice deadlocked before reaching a verdict.[4]

It is fundamental that the state must prove the guilt of a defendant in a criminal case beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *State* v. *DelVecchio,* 191 Conn. 412, 419, 464 A.2d 813 (1983). Because an explanation of the concept of reasonable doubt is "perhaps the most important aspect" of a trial court's jury instructions, a defendant is entitled to a "clear and unequivocal" instruction by the court that guilt must be proved beyond a reasonable doubt. (Internal quotation marks

---

[4] The defendant also contends that the trial court, by its preliminary instructions, singled out women jurors and questioned their ability to serve as fact finders.

omitted.) *State* v. *DelVecchio,* supra, 420. Although a court's attempt to clarify the concept of reasonable doubt "by explanation, elaboration or illustration" is not necessarily reversible error, attempts to do so "more often than not tend to confuse or mislead." (Internal quotation marks omitted.) *State* v. *Marra,* 222 Conn. 506, 536–37, 610 A.2d 1113 (1992); *State* v. *DelVecchio,* supra, 420–21.

A trial court has the discretion, in a criminal case, to provide preliminary instructions to prospective jurors. *State* v. *Lewis,* 220 Conn. 602, 614, 600 A.2d 1330 (1991); *State* v. *Woolcock,* 201 Conn. 605, 622, 518 A.2d 1377 (1986). The final charge, however, supersedes and usually overrides earlier suspect remarks, particularly if the closing charge is temporally distant from the challenged preliminary remarks. See *State* v. *Lewis,* supra, 614; *State* v. *DelVecchio,* supra, 422; *State* v. *Kelly,* 23 Conn. App. 160, 168–70, 580 A.2d 520, cert. denied, 216 Conn. 831, 583 A.2d 130 (1990), cert. denied, 499 U.S. 981, 111 S. Ct. 1635, 113 L. Ed. 2d 731 (1991). When a defendant challenges a preliminary instruction regarding a principle of criminal law, the issue is whether the court's instructions at the conclusion of the trial correctly conveyed the concept to the jury, and whether the preliminary instructions affected the fairness or integrity of the proceedings. *State* v. *Marra,* supra, 537.

In this case, the court gave several examples of methods that cannot be used in determining reasonable doubt, including hunches, guesses, gut feelings, and itchy elbows. The court put a "woman's intuition" in the same category. This attempt to clarify the concept of reasonable doubt was ill advised and totally inappropriate. Gender bias, particularly bias based on stereotypes, has no place in the courtroom.[5] The court

[5] Canon 3B (5) of the Model Code of Judicial Conduct of the American Bar Association directs judges not to manifest by words or conduct bias or prejudice based on sex.

should not have placed its judicial imprimatur on a plati-
tude that neither defines a legal concept nor enhances
a bias-free atmosphere.

Nevertheless, nearly two weeks had elapsed between
the challenged preliminary instructions and the correct
and lengthier explication given at the close of the case.
The court also correctly restated the concept of rea-
sonable doubt to the jury during its deliberations. As
a result, the jurors twice heard proper explanations of
reasonable doubt, and received them at the stage of
the trial when their attention was heightened. Since
we conclude that the final instructions as to reasonable
doubt overrode the earlier impermissible instructions,
it is not reasonably possible that the jury was misled.[6]
No constitutional violation exists that clearly deprived
the defendant of a fair trial. *State* v. *Golding,* supra.

## II

The defendant next claims that the trial court's sup-
plemental "Chip Smith" charge[7] violated the defend-

---

[6] Had the court made the remarks at the close of the case, our conclu-
sion that the jury was not misled might well have been different. We also
acknowledge that preliminary instructions could be so outrageous that they
could not be erased by subsequent correct instructions and, thus, would
mislead a jury.

[7] The trial court gave the following supplemental instruction pursuant
to *State* v. *Smith,* 49 Conn. 376 (1881), after the jurors informed the court
that they were deadlocked: "[T]here is no principle of law in the state of
Connecticut for less than a unanimous verdict. Where there is no unani-
mous verdict, the case becomes mistried and must be tried all over again
before another jury. For that reason, I'm going to give you a further oppor-
tunity to attempt to arrive at a unanimous verdict, with this further instruc-
tion. Although the verdict to which each juror agrees must be his own
conclusion and not a mere acquiescence to the conclusions of his colleagues,
yet in order to bring twelve minds to a unanimous result, the jurors should
examine with candor the questions submitted to them and with due regard
and deference to the opinions of each other, and, conferring together, the
jury ought to pay proper respect to each other's opinion and listen with
an open mind to each other's argument. If the much larger number of the

ant's constitutional rights under the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. The defendant contends that the trial court improperly failed to remind the jurors of the state's burden of proof and the defendant's presumption of innocence when it instructed them to reassess their positions in an effort to reach a unanimous verdict after they had twice informed the court that they were deadlocked. The defendant did not object at trial to the instruction on the grounds he now claims, and does not claim review under *State* v. *Golding,* supra.[8]

In this case, the first two conditions of *Golding* are met because there is an adequate record for review and the defendant has a constitutional right not to be convicted except by proof beyond a reasonable doubt. *In re Winship,* supra. Upon a review of the merits, however, we conclude that no constitutional violation exists that clearly deprived the defendant of a fair trial.

panel are for conviction, a dissenting juror should consider whether the doubt in his own mind is a reasonable one, which makes no impression upon the minds of so many others, equally honest, equally intelligent with himself. We have heard the same evidence, with the same attention, and with equal desire to arrive at the truth, and under the same sanctions which the law imposes upon them in the matter of their oath. And, on the other hand, if the majority are for acquittal, the minority ought to seriously ask themselves whether they may not reasonably and ought not to doubt a judgment which is not concurred in by most of those whom they are associated with and distrust the weight or sufficiency of that evidence which fails to carry conviction in the minds of their colleagues. Now, applying that principle, I request that you continue your deliberations."

[8] Pursuant to Practice Book § 4185, we need not consider a claim on appeal unless it was distinctly raised at the trial or arose subsequent to the trial. "This court reviews rulings solely on the ground on which the party's objection is based." *State* v. *Manning,* 162 Conn. 112, 118, 291 A.2d 750 (1971); *State* v. *Busque,* 31 Conn. App. 120, 127, 623 A.2d 532, cert. denied, 226 Conn. 910, 628 A.2d 984 (1993).

Although the defendant did not seek *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), or plain error review, we may consider an unpreserved claim under these alternative routes. See Practice Book § 4185; *State* v. *Johnson,* 26 Conn. App. 433, 438–39, 438 n.4, 602 A.2d 36, cert. denied, 221 Conn. 916, 603 A.2d 747 (1992).

It is well established, in fact, over established, that a trial court may give a "Chip Smith" instruction when a jury informs the court that it is unable to reach a unanimous verdict. See *State* v. *Pinnock,* 220 Conn. 765, 795, 601 A.2d 521 (1992); *State* v. *Colon,* 28 Conn. App. 231, 245, 611 A.2d 902, cert. denied, 223 Conn. 922, 614 A.2d 827 (1992). We, however, have never held that, as the defendant now urges, the court must remind the jurors of the state's burden of proof and the defendant's presumption of innocence when it provides a "Chip Smith" instruction.[9] Because the defendant did not object at trial to the "Chip Smith" instruction on these grounds, the trial court did not have the opportunity to consider amending the instruction to include a restatement of the burden of proof and the presumption of innocence. *State* v. *Pinnock,* supra, 796. Furthermore, although the trial court did not restate these two principles of criminal law, the court, in response to the jury's request, did restate the definition of reasonable doubt prior to giving the "Chip Smith" instruction. We conclude, therefore, that a constitutional violation does not exist so clearly as to deprive the defendant of a fair trial.

### III

This court next considers whether the evidence presented at trial was sufficient to sustain the conviction of the defendant. In order to evaluate the sufficiency of the evidence in a jury trial, the reviewing court first construes the evidence presented at trial in the light most favorable to sustaining the verdict, and then determines whether the jury could have reasonably found, on the basis of the facts established and the inferences reasonably drawn from the facts, that the cumulative effect of the evidence established guilt beyond

---

[9] Our Supreme Court has simply noted its approval of such a practice. See *State* v. *Hopkins,* 222 Conn. 117, 129, 609 A.2d 236 (1992).

a reasonable doubt. *State* v. *Baldwin,* 224 Conn. 347, 368, 618 A.2d 513 (1993); *State* v. *Gray,* 221 Conn. 713, 719–20, 607 A.2d 391, cert. denied, U.S. , 113 S. Ct. 207, 121 L. Ed. 2d 148 (1992); *State* v. *Allen,* 216 Conn. 367, 380, 579 A.2d 1066 (1990). In conducting this review, the probative force of the evidence is not diminished where the evidence, in whole or in part, is circumstantial rather than direct. *State* v. *Baldwin,* supra; *State* v. *Gray,* supra, 720; *State* v. *Allen,* supra, 380–81.

In determining the sufficiency of the evidence, a reviewing court cannot pass on the credibility of witnesses. *State* v. *Baldwin,* supra, 367–68; *State* v. *Robinson,* 213 Conn. 243, 256, 567 A.2d 1173 (1989). The trier of fact, not the reviewing court, determines the credibility of witnesses and the weight accorded their testimony. *State* v. *Baldwin,* supra; *State* v. *Robinson,* supra. Furthermore, the jury is to draw from the evidence or the facts established by the evidence whatever inferences it deems reasonable and logical. *State* v. *Stanley,* 223 Conn. 674, 681, 613 A.2d 788 (1992); *State* v. *Gray,* supra, 721. The jury is not prevented from drawing inferences consistent with guilt nor is it required to draw inferences consistent only with innocence. *State* v. *Stanley,* supra; *State* v. *Gray,* supra.

In this case, the jury reasonably could have found that the evidence established guilt beyond a reasonable doubt. The jury reasonably could have concluded from the testimony presented at trial that the defendant left the halfway house undetected after the midnight head count, committed the crime outside the cafe, and returned to the facility in time for the 2 a.m. count. Although conflicting testimony was presented at trial, it is within the province of the jury to decide which witnesses are credible and which are not. We conclude, therefore, that the evidence was sufficient to sustain the conviction.

The judgment is affirmed.

In this opinion the other judges concurred.