### STATE OF CONNECTICUT *v.* TROY JAYNES
### (13074)

O'CONNELL, LANDAU and FREEDMAN, Js.

---

542

Argued March 23—decision released August 23, 1994

*Elizabeth M. Inkster,* assistant public defender, for the appellant (defendant).

*Judith Rossi,* assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, for the appellee (state).

FREEDMAN, J. The defendant appeals[1] from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a,[2] and possession of a firearm without a permit in violation of General Statutes § 29-35.[3] On appeal, the defendant claims that (1) the trial court improperly found that testimony regarding alleged attempts by police officers to bribe defense witnesses was inadmissible hearsay, (2) the trial court improperly refused to give an addict-informant instruction, (3) the trial court improperly instructed the jury regarding reasonable doubt and the

---

[1] This appeal was taken originally to the Supreme Court. Pursuant to Practice Book § 4023, the Supreme Court transferred the appeal to this court.

[2] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[3] General Statutes § 29-35 provides in pertinent part: "(a) No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

presumption of innocence in violation of the constitutional guarantees of due process and the right to a fair trial, (4) the trial court should have declared a mistrial, sua sponte, and improperly denied the defendant's motion for a new trial because of threats to a juror, and (5) the defendant's constitutional and statutory rights to be tried by a jury composed of twelve sworn jurors were violated. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On March 29, 1990, the police were dispatched to investigate a report of gunshots in the area of Southwest and Dixwell Avenues in New Haven. Upon arrival, Officer Kelly Dillon observed a male in his late twenties lying on the side of the street. He was not moving and appeared to be unconscious. Dillon observed blood on and around the victim. There were no people on the street and Dillon's attempt to locate any witnesses that night was fruitless. The paramedics arrived and moved the victim, revealing a .38 caliber revolver underneath him. No fingerprints were found on the gun or on the shells inside it. The victim was taken to the Hospital of St. Raphael where he was pronounced dead.

The police conducted an investigation of the neighborhood in search of witnesses to the events of the night of March 29. They located two eyewitnesses, Bernard Draughn and James Taft. Both were drug runners who had worked for the defendant. They had observed the defendant shoot the victim at close range. The victim had been shot five times at close range. The ballistics report revealed that the gun found at the scene was not the gun used to shoot the victim.

Additional facts will be set forth as necessary for the resolution of this appeal.

I

The defendant first claims that the trial court improperly found that testimony regarding alleged attempts

by police officers to bribe defense witnesses was inadmissible hearsay.

The following additional facts are necessary for the proper resolution of this issue. At trial, the defendant offered the testimony of two witnesses, Marcus Thomas and Dwayne Branch. Both men testified that they had been questioned by police with respect to the shooting on March 29. Out of the presence of the jury, they further testified that during their respective questionings, Detectives Joseph Greene and Tony DiLullo had offered them "girls or money" in exchange for their giving false statements incriminating the defendant. Thomas also testified that DiLullo had directed a racial slur at him.

A

The defendant called Thomas as his first witness. Out of the presence of the jury, he testified that during one of his many questionings by Officer Dirkey McCoy and DiLullo, he got upset and asked the officers to leave. In response to Thomas' request that the officers leave, he testified that DiLullo said, "Who you think they going to believe, you niggers or me?" and "That's all right, you ain't got to help because I'll put in the report what I want to put in the report." The state objected on hearsay and relevancy grounds. The court sustained the objection.

" '[E]vidence is relevant if it has a tendency to establish the existence of a material fact.' *State* v. *Mastropetre*, 175 Conn. 512, 517, 400 A.2d 276 (1978). ' "One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. . . . No precise and universal test of relevancy is furnished by the law, and the question must be deter-

mined in each case according to the teachings of reason . . . ." ' *State* v. *Sharpe,* 195 Conn. 651, 659, 491 A.2d 345 (1985)." *State* v. *Woodson,* 227 Conn. 1, 16, 629 A.2d 386 (1993).

The transcript reveals that the defendant may have offered this testimony in anticipation of the state's offering a statement given by Thomas to the police that was contradictory to the testimony Thomas gave at trial. At the time of this offer of testimony, the state had not introduced the statement to the police, nor would it do so at any subsequent time. Because the statement by DiLullo was relevant only for the purpose of explaining why Thomas' testimony at trial differed from his statement to the police, and the statement to the police had not been introduced at the time of the offer of testimony, the trial court properly sustained the objection on the ground that it was not relevant.

Because we conclude that the trial court properly excluded this statement on relevancy grounds, we need not determine whether the trial court also properly sustained the objection on the ground that the statement was hearsay.

## B

Out of the presence of the jury, Thomas later testified that when he would not say what the police wanted to hear, DiLullo had asked him, "What do you want, girls, money, what do you want?" The state objected on the grounds of relevancy and hearsay. The court ruled that the statement may be relevant because it may support the defendant's defense that he had been railroaded by the police, but that the statement was, nonetheless, inadmissible because it was hearsay. The court informed the defendant that he was free to pursue this defense, as long as the questions were phrased so as not to elicit a hearsay response. The defendant

took an exception. After the court's ruling, the defendant did not ask Thomas any further questions regarding the alleged bribery attempt.

Branch later testified, also out of the presence of the jury, that he too had been offered "girls and money," and that he perceived the offer as an attempt by Greene and DiLullo to induce him to perjure his testimony. The state again objected on the ground that the statement was hearsay. The trial court heard argument from both sides and sustained the objection.

The defendant claims that the statements with regard to the offers of girls and money were not hearsay, and, therefore, the trial court improperly precluded their admission. We agree. We conclude, however, that the error was harmless.

The defendant claims the statements were not hearsay on two grounds. First, the question, "What do you want, girls, money, what do you want?" was not offered to prove the truth of the matter asserted but to prove that the police officers had offered him a bribe, and, second, the statement was offered to show the effect on the witness. We are not persuaded by the defendant's second argument because the effect of the words on the witness is not relevant in this case. It is true that "[a] statement that is offered to show its effect upon the hearer . . . is not hearsay. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Alvarez,* 216 Conn. 301, 310, 579 A.2d 515 (1990). Because the state, however, had not offered the statement given to the police by Thomas that purportedly conflicted with his testimony at trial, there was no issue as to the effect of the statement on the witness. We conclude, therefore, that to the extent that the question, "What do you want, girls, money, what do you want?" was offered to show the effect on the witness, it was properly excluded because the effect on the witness was not relevant.

With regard to the defendant's claim that the questions were not hearsay because they were not offered to prove the truth of the matter asserted, we agree with the defendant. Hearsay is an out-of-court statement that is offered to establish the truth of the facts contained in the statement. C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 11.1.1, citing *State* v. *Miller,* 154 Conn. 622, 629, 338 A.2d 167 (1967), and *Murray* v. *Supreme Lodge, N.E.O.P.,* 74 Conn. 715, 718, 52 A. 722 (1902). A statement may or may not be hearsay, depending upon the purpose for which it is offered. "When declarations are offered . . . for the purpose of showing that such statements were made and not that what was declared was true, they do not come within the rule." 2 B. Holden & J. Daly, Connecticut Evidence (1988) § 93a, citing *McDermott* v. *McDermott,* 97 Conn. 31, 37–38, 115 A. 638 (1921); *Engel* v. *Conti,* 78 Conn. 351, 354, 62 A. 210 (1905).

Here, the defendant offered the question, "What do you want, girls, money, what do you want?" to show that the police had in fact attempted to bribe the witnesses to falsify their testimony. It was not offered to show either that Thomas wanted girls or money or that the police would have given him girls or money had he in fact perjured his testimony, but only to show that the police had attempted to bribe him. The trial court, therefore, improperly excluded the offered statement on the ground that it was hearsay.

Nevertheless, the error was harmless. The defendant claims that the trial court's exclusion of the statement was harmful in that it denied him his constitutional right to present a defense. We do not agree.

"Whether a trial court's erroneous restriction of a defendant's or defense witness's testimony in a criminal trial deprives a defendant of his due process right

to present a defense is a question that must be resolved on a case-by-case basis. See *State* v. *Bryant,* 202 Conn. 676, 704, 523 A.2d 451 (1987)." *State* v. *Jones,* 205 Conn. 723, 731, 535 A.2d 808 (1988). The defendant argues that the trial court's exclusion of the statement deprived him of his due process right to present a defense. He further argues that the burden is on the state to prove that this error was harmless beyond a reasonable doubt. *Chapman* v. *California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Despite these claims, we conclude that the trial court's error in this regard was not of constitutional magnitude. See *State* v. *Jones,* supra, 731.

Because we have concluded that the trial court's exclusion of the statement was not of constitutional magnitude, "the burden rests upon the defendant to demonstrate the harmfulness of the court's ruling. *State* v. *Jones,* [supra, 205 Conn. 732]; *State* v. *Ruth,* 181 Conn. 187, 196–97, 435 A.2d 3 (1980); but see *State* v. *Torres,* 210 Conn. 631, 642–43, 556 A.2d 1013 (1989) (state required to prove harmlessness where the court made a series of fundamentally unfair evidentiary rulings, escalating the error to a constitutional violation). To sustain this burden, the defendant must demonstrate that 'it is more probable than not that the erroneous action of the court affected the result.' *State* v. *Jones,* supra, 732; *State* v. *Ruth,* supra, 196–97; *State* v. *McClain,* 171 Conn. 293, 300, 370 A.2d 928 (1976)." *State* v. *Tatum,* 219 Conn. 721, 738, 595 A.2d 322 (1991).

The defendant claims that the exclusion of the statement was harmful in that it denied the defendant his constitutional right to present a defense. In sustaining the hearsay objection to the statements regarding the offer of girls and money, however, the court ruled that the evidence may very well have been relevant and, thus, the defendant was free to pursue his defense that

he had been railroaded, as long as the questions were phrased so as not to elicit a hearsay response. The defendant, however, did not ask any further questions regarding the alleged bribery attempts. In addition, he failed to cross-examine the state's witnesses, Draughn and Taft, regarding whether the police had in fact bribed them to perjure their testimony, and he also failed to call the police officers to testify. The defendant, therefore, was not prevented from presenting his defense; he simply did not pursue it any further.

Because the defendant was free to pursue his defense in ways other than asking Thomas and Branch what the detectives had said to them, and failed to do so, we conclude that the defendant cannot demonstrate that it was more probable than not that the trial court's exclusion of the statement affected the result.

II

The defendant next claims that the trial court improperly refused to give an addict-informant charge. Specifically, he claims that the trial court's refusal to charge as requested or to give any charge regarding the special credibility concerns of the testimony of addicts deprived the defendant of his "constitutional rights to an adequately instructed jury and to a fair trial by failing to provide the jury with complete instruction . . . ." *State* v. *Casey*, 201 Conn. 174, 178, 513 A.2d 1183 (1986).

The following facts are necessary for the resolution of this issue. Two of the state's witnesses, Draughn and Taft, identified the defendant as the shooter. Both admitted that they had used narcotics at the time of the shooting. Draughn testified that he was not high the night of the shooting and that he had stopped using narcotics in June, 1990. Taft testified that he was not sure whether he was high at the time of the shooting.

At trial, Taft was never asked whether he still used narcotics; thus, it was never established that he was an addict at that time.

The defendant filed the following request to charge: "If a witness for the State of Connecticut is also a narcotics addict, there are additional reasons why his testimony should be considered with great care. An addict has a constant need for a supply of drugs and for money to support his habit and also may have an abnormal fear of imprisonment in which his supply of drugs might be cut off. These are special circumstances which you may consider in weighing testimony of this kind. You, of course, may give the testimony such weight as you think proper after considering all relevant circumstances." The trial court did not charge as requested and the defendant took an exception. This claim, therefore, was adequately preserved. See Practice Book §§ 852, 4185.

The defendant asserts that because the defendant properly requested an addict-informant charge[4] the trial court was required to give such a charge. We do not agree.

An addict-informant charge is a specialized instruction given in cases where a government informant was addicted to narcotics at the time of his or her informant activities. *United States* v. *Kinnard,* 465 F.2d 566, 571 (D.C. Cir. 1972); *Government of Virgin Islands* v. *Hendricks,* 476 F.2d 776, 779 (3d Cir. 1973). The charge

---

[4] Our review of Connecticut case law reveals that the propriety of an addict-informant charge has not been addressed. In addition, neither the Federal District Court not the Court of Appeals of the Second Circuit has addressed the propriety of an addict-informant charge. The parties cite solely to federal cases from various circuits for their authority. Because our resolution of this issue turns on the fact that the relevant witnesses were not informants, nor was the evidence clear that they were addicts, we do not address the questions of whether and when an addict-informant charge is relevant or required under Connecticut law.

directs the jurors' attention to the potential unreliability of an addict-informant's testimony. An informant's testimony, in particular, is potentially unreliable because the credibility of a paid informant is suspect when, by placing the guilt on another, the informant-witness' furthers his or her own interest. *Fletcher* v. *United States,* 158 F.2d 321, 322 (D.C. Cir. 1946). There is a dispute among the United States Courts of Appeals as to when such a charge is required.[5] *United States* v. *Hoppe,* 645 F.2d 630, 633 (8th Cir. 1981). We conclude that an addict-informant instruction is not appropriate in this case.

It is obvious that before a charge regarding the testimony of a witness who is an addict-informant would be required, there must be evidence tending to show that the witness in fact is an addict-informant.[6]

[5] "Several circuits have indicated that upon request such an instruction must be given. *Virgin Islands* v. *Hendricks,* 476 F.2d 776, 779 (3d Cir. 1973); *United States* v. *Collins,* 472 F.2d 1017, 1018–19 (5th Cir. 1972), cert. denied sub nom. *Branch* v. *United States,* 411 U.S. 983, 93 S. Ct. 2278, 36 L. Ed. 2d 960 (1973). See generally *United States* v. *Kinnard,* 465 F.2d 566, 569 (D.C. Cir. 1972) (Bazelon, C. J.). . . . [Other] circuits [have held] that the circumstances of each case determine the need of an addict-informant instruction. *United States* v. *Tousant,* 619 F.2d 810, 812 (9th Cir. 1980); *United States* v. *Wright,* 542 F.2d 975, 988–89 (7th Cir. 1976), cert. denied 429 U.S. 1073, 97 S. Ct. 810, 50 L. Ed. 2d 790 (1977); *United States* v. *Gregorio,* 497 F.2d 1253, 1261–63 (4th Cir.), cert. denied, 419 U.S. 1024, 95 S. Ct. 501, 42 L. Ed. 2d 298 (1974)." *United States* v. *Hoppe,* 645 F.2d 630, 633 (8th Cir. 1981).

[6] "In *United States* v. *Shigemura,* 682 F.2d 699, 702–703 (8th Cir. 1982), cert. denied, 459 U.S. 1111, 103 S. Ct. 741, 74 L. Ed. 2d 962 (1983), the following four factors were considered in determining whether an addict instruction was necessary: (1) was the informant an addict at the time of the trial, not when the alleged transactions occurred; (2) was her addiction subject to cross-examination; (3) was the jury instructed that the addict's testimony should be particularly scrutinized; and (4) was the addict's testimony corroborated. See also *United States* v. *Tousant,* 619 F.2d 810, 812 (9th Cir. 1980) ('Where the fact of addiction is not clear and where the district court has not precluded the defendant from establishing it, it is not error to reject an instruction on addiction.') (citation omitted). The concerns with respect to assuring a fair trial are that the jury be properly

Although, the two witnesses may have been addicts at the time they witnessed the shooting, there was no evidence that they were addicted to narcotics at the time of trial, nor was there any evidence that they were government informants. The two men were simply witnesses to a shooting. Draughn testified that he was not addicted to narcotics at the time of trial and that he had not used drugs since June, 1990. With regard to Taft, it is not clear from the evidence that he was or was not addicted to narcotics at the time of trial. The defendant, thus, has not established that either Draughn or Taft was an addict at the time of trial or that either was an informant. Because the witnesses were not informants, nor were they shown to be addicts at the time of trial, the concerns regarding the testimony of addicts and informants were not present in this case. There was, therefore, no need for a charge addressing those concerns and the trial court properly refused to give an addict-informant instruction.

The defendant claims, in the alternative, that, even if the addict-informant instruction was not required, the trial court was required to give at least some sort of instruction regarding the unique credibility concerns of narcotics addicts. The trial court charged the jury on the issue of the credibility of witnesses in general.[7] The defendant claims that this charge was inadequate. We do not agree.

instructed about addiction and its effects if a witness is an addict. The jury must also be appraised of the particular facts of a witness' drug use through direct and cross-examination." *United States* v. *Manganellis,* 864 F.2d 528, 543 (7th Cir. 1988); see also *United States* v. *Smith,* 692 F.2d 658, 661 (10th Cir. 1982); *United States* v. *Hoppe,* 645 F.2d 630, 633 (8th Cir. 1981); *United States* v. *Gregorio,* 497 F.2d 1253, 1262 (4th Cir.), cert. denied, 419 U.S. 1024, 95 S. Ct. 501, 42 L. Ed. 2d 298 (1974).

[7] The trial court charged the jury regarding the credibility of witnesses as follows: "The credibility of witnesses and the weight to be given their testimony are matters which are properly your function to determine, however, it's proper for me to make a couple of suggestions. Now, no fact is, of course, to be determined merely because of the number of witnesses tes-

"Our review of the defendant's claim requires that we examine the court's entire charge to determine whether it is reasonably possible that the jury could have been misled by the omission of the requested instruction. See *State* v. *Rollinson,* 203 Conn. 641, 665, 526 A.2d 1283 (1987); *State* v. *Utz,* 201 Conn. 190, 209, 513 A.2d 1191 (1986). While a request to charge that

tifying for or against it. It is the quality and not the quantity of testimony which is to be controlling. In weighing the testimony of a witness, you should consider his or her appearance on the witness stand, in other words, you should try to size the witness up, you should have in mind all those little circumstances which point to his or her truthfulness or untruthfulness. You should consider any possible bias or prejudice that he or she may have whether for or against the state or for or against the accused, the interest of the witness or the lack of interest of whatever sort in the outcome of the trial, his or her ability to observe facts correctly and to remember and relate them truthfully and accurately. You should test the evidence that the witness gives by your own knowledge of human nature and the matters which influence and control human actions. If any facts are admitted or otherwise proven to you, you may well bring those into relationship with the testimony and see if they fit together. In short, you are to bring to bear upon such testimony the same considerations and use the same sound judgment that may apply to questions of truth and veracity which are daily presenting themselves for your decision in the ordinary affairs of life. The credit with which you will give the testimony to be offered by the various witnesses is, as I have said, something for you alone to determine. Whether a witness testifies inaccurately and you do not think that the inaccuracy was consciously dishonest, you should bear that in mind and scrutinize the whole testimony of that witness. Thus, if you find that there is an inaccuracy in any one respect on the part of a witness, remember that in judging the rest of his or her testimony and give it the weight which you in your own mind leads you to think it ought to have and which you would attach to it in the ordinary affairs of life where someone came to you in a matter and you found that in some particulars they may have been inaccurate. If, however, you conclude that a witness was not only testifying falsely, but that he or she had done so intentionally or willfully, this fact casts a very serious doubt upon all of his or her testimony and you might well conclude that you could not accept any of it. That fact, however, is a matter for you to determine, and even though you find that he or she essentially gave false testimony to certain matters, you may find that as to certain other matters their testimony was worthy of acceptance by you as being true. After all, whether you should believe all of the witness' testimony, or believe only some portions of it, or none of it, it's entirely up to you, the ladies and gentlemen of the jury, to decide."

is relevant to the issues in a case and that accurately states the applicable law must be honored, a court need not tailor its charge to the precise letter of such a request. *State* v. *Bennett,* 172 Conn. 324, 330, 374 A.2d 247 (1977). If a requested charge is in substance given, the court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. See *State* v. *Jennings,* 216 Conn. 647, 663, 583 A.2d 915 (1990); *State* v. *Casey,* [supra, 201 Conn. 178]. ' "Whether a charge is possibly misleading depends on the substance rather than the form of what is said." ' *State* v. *Stevenson,* 198 Conn. 560, 571, 504 A.2d 1029 (1986); see *State* v. *McMurray,* 217 Conn. 243, 253, 585 A.2d 677 (1991); *State* v. *Kurvin,* 186 Conn. 555, 565, 442 A.2d 1327 (1982)." *State* v. *Ortiz,* 217 Conn. 648, 661–62, 588 A.2d 127 (1991). In addition, "[w]hether certain factors relating to witness credibility need to be stressed will largely be left to the trial court's discretion and will not be overturned on appeal absent a clear abuse of discretion. *State* v. *Mancinone,* 15 Conn. App. 251, 280 [545 A.2d 1131] (1988)." J. Bruckmann, G. Nash & J. Katz, Connecticut Criminal Caselaw Handbook: A Practitioner's Guide (1989), p. 399.

Under this standard of review, we conclude that the trial court properly discharged its duty to instruct the jury in a manner calculated to give a clear understanding of the issues regarding the credibility of witnesses. The trial court instructed the jury extensively on the subject of credibility of witnesses. Throughout its instructions, the trial court stressed the different ways of evaluating the truthfulness of testimony, it specifically pointed out that the jury should consider possible bias or prejudice, interest or lack of interest in the outcome, and the ability to observe and relate accurately. It is, therefore, not reasonably possible that the jury was misled.

### III

The defendant next claims that the trial court improperly instructed the jury regarding reasonable doubt and the presumption of innocence. Specifically, the defendant claims the trial court's instructions to the jury that a reasonable doubt "is a doubt for which you can in your own minds conscientiously find a reason," and that "the rules of evidence are made to protect the innocent and not the guilty" taken together, violate the constitutional guarantees of due process and the defendant's right to a fair trial. We do not agree.

The following additional facts are necessary for the proper resolution of this issue. The defendant submitted a written request to charge that specifically excepted to a charge on reasonable doubt that included an articulation or explanation of what a reasonable doubt includes. Thus, this claim is properly preserved for our review. See Practice Book § 852. With respect to the defendant's claim regarding the presumption of innocence, the defendant did not file a request to charge, nor did he take an exception at the time of trial; he, therefore, seeks review of this claim under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989).

Under *State* v. *Golding,* supra, 213 Conn. 239–40, a defendant can prevail on an unpreserved claim of constitutional error "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt."

"The first two conditions of *Golding* are determinations of whether a defendant's claim will be reviewed,

and the third condition involves a review of the claim itself. *Wilson* v. *Cohen,* 222 Conn. 591, 603, 610 A.2d 1177 (1992); *State* v. *Graham,* 33 Conn. App. 432, 442, 636 A.2d 852 (1994); see also *State* v. *Thurman,* 10 Conn. App. 302, 306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987)." *State* v. *Walker,* 33 Conn. App. 763, 769, 638 A.2d 1084 (1994). "In harmony with the objective of *Golding,* the defendant's claim may be disposed of by focusing on whichever condition is most relevant in the particular circumstances. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Cooper,* 227 Conn. 417, 440, 630 A.2d 1043 (1993). "A defendant may prevail under the third prong of *Golding* on a claim of instructional error only if, considering the substance of the charge rather than the form of what was said, it is reasonably possible that the jury was misled. [*State* v. *Walton,* 227 Conn. 32, 65, 630 A.2d 990 (1993).]" (Internal quotation marks omitted.) *State* v. *Walker,* supra, 769.

The trial court charged the jury with regard to the presumption of innocence as follows: "It is the sworn duty of the courts and jurors to safeguard the rights of persons charged with a crime by respecting the presumption of innocence, and by making the state meet its burden of proving guilt beyond a reasonable doubt, but you must keep in mind that these rules of evidence are made to protect the innocent and not the guilty. If and when the presumption of innocence has been overcome by evidence proving beyond a reasonable doubt that the accused is guilty of the crime or crimes as charged, then it is your sworn duty to enforce the law and to render a verdict of guilty on that charge or charges. By the same token, if you are not satisfied beyond a reasonable doubt, it's your sworn duty to find the accused not guilty of that charge or charges."

Our Supreme Court previously has approved the same or similar jury instructions. *State* v. *Walton,*

supra, 227 Conn. 66–67; *State* v. *Stanley,* 223 Conn. 674, 695, 613 A.2d 788 (1992). We conclude that this instruction, regarding the presumption of innocence, taken as a whole, adequately informed the jury that the state had the burden of proving the defendant guilty beyond a reasonable doubt. As a result, we also conclude that no constitutional violation exists that clearly deprived the defendant of his right to due process or a fair trial. We decline, therefore, to grant review of this claim pursuant to *Golding.*

With regard to the charge on reasonable doubt,[8] our Supreme Court in *State* v. *Derrico,* 181 Conn. 151, 170, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980), considered the identical language as that presently before us. In *Derrico,* the

---

[8] The trial court charged on reasonable doubt as follows: "Now, reasonable doubt is a doubt that is based upon reason and grows out of the evidence or lack of evidence in the case. A reasonable doubt is not such a doubt as may be raised by one questioning merely for the sake of raising a doubt. It is not a surmise, a guess, or a conjecture. Obviously, under our system, a defendant should never be convicted on a mere conjecture or suspicion. A reasonable doubt is not a hesitation springing from any feelings of sympathy or pity for the accused or for any other person or persons who might in any way be affected by your decision. It is a doubt that is reasonable in light of the evidence and is honestly entertained by a juror after a fair comparison and careful examination of the entire evidence in the case. It is a doubt for which you can in your own minds conscientiously find a reason. However, the state of Connecticut is not required to absolutely demonstrate the guilt of the accused, but that proof must be beyond a reasonable doubt, and this reasonable doubt is one which reasonably arises from the evidence or want of evidence in the case, and any other doubt than this is not a reasonable doubt. The state of Connecticut does not desire the conviction of an innocent person, nor any person who is presented on evidence where there is reasonable doubt. The state does not wish to have an innocent person punished or have a guilty person acquitted. But for the safety and well-being of society and the protection of life and property, the state is concerned in securing the conviction of individuals who have been proven guilty of committing the crimes charged beyond a reasonable doubt. It is the law of this state that a man shall not be convicted upon a mere suspicion or speculation. The state must prove his guilt beyond a reasonable doubt."

court held that the trial court's charge, including the language defining a reasonable doubt as a doubt "for which you can in your own minds conscientiously give a reason," when considered together with the rest of the charge "was proper and sufficient guidance for the jury, and fairly presented the case to the jury so that no injustice resulted. . . ." (Citations omitted.) Id., 170–71. Our review of the charge given to the jury in this case reveals that the charge, taken as a whole, also provided the jury with proper and sufficient guidance such that the defendant was not denied due process or a fair trial. We conclude, therefore, that the trial court did not improperly charge the jury with respect to "reasonable doubt" or the "presumption of innocence" in violation of the defendant's right to due process and a fair trial.

The defendant claims that the combination of these two improper charges violated his constitutional right to due process and a fair trial. Because we conclude that neither charge was improper, taking them together would not change that result.

## IV

The defendant next claims that the trial court improperly failed to declare a mistrial sua sponte, and, further, improperly denied the defendant's motion for a new trial based on threats to a juror. We do not agree.

The following additional facts are necessary for the proper resolution of this issue. After the conclusion of evidence, but before closing arguments, a juror notified the court that he had received a threatening telephone call the previous night. The court called the juror to testify regarding the telephone call. The juror testified that he had been awakened by a telephone call around 1:30 a.m. and that a male voice on the line threatened him. The only part of the message that he recalled was the end when he heard "or you are a dead

man." He testified that he did not recall most of the call because he was in the process of waking up. He assumed that the threat was related to the trial, and told the other jurors about the call.

At that point, the trial court excused the juror to a room so that he was separated from the other jurors and spoke to counsel in chambers. Upon returning to the courtroom, the trial court stated that there was nothing in the juror's testimony that would clearly tie the threat to this particular case. The trial court then explained that he intended to call in the other jurors, and to ask them collectively whether anyone else had received a telephone call or any other communications during the course of the trial. The trial court further stated that if none of the other jurors had received any communications, then the court would instruct them to disregard anything regarding the threatening telephone call because, after questioning the single juror in private, it was apparent that the threatening call was not related to this case. The trial court then explained that it intended to excuse the single juror and that they would select an alternate by lot at a later time.

At that point, the defendant requested that the trial court inquire into whether the ability of any of the remaining jurors to decide the case fairly and impartially might be affected by their knowledge of the threatening telephone call. The trial court then called in the remaining jurors, and proceeded in accordance with its previously stated plan. The trial court also asked, "Now, did any of you have any particular problems in sitting on this case at this time?" The jurors responded in the negative. The jury was excused and the defendant again expressed a concern regarding the ability of the jurors to decide the case fairly and impartially. The trial court summoned the jury and further stated to the jury, "Now, I would assume that all of you can still be fair and impartial sitting on this mat-

ter, if you can't, kindly let me know now. Seeing no hands, thank you, because I think you could do it." The defendant did not object. After the jury returned its verdict finding the defendant guilty, the defendant filed a motion for a new trial on the ground that "the jury's verdict of guilty reflects that the jury may have considered and likely did consider [the threatening telephone call] in reaching their verdict."

The defendant claims that the trial court improperly failed to declare a mistrial sua sponte after learning of the threatening telephone call. The defendant asserts that because there is a presumption of prejudice where a juror in a criminal case is contacted, shifting the burden to the state to prove that the contact was harmless, the trial court should have declared a mistrial sua sponte. We do not agree.

" 'The trial court has great latitude in ruling on motions for mistrial. *State* v. *Nowakowski,* 188 Conn. 620, 624, 452 A.2d 938 (1982); *State* v. *Perez,* 181 Conn. 299, 310, 435 A.2d 334 (1980).' *Holbrook* v. *Casazza,* 204 Conn. 336, 355, 528 A.2d 774 (1987), cert. denied, 484 U.S. 1006, 108 S. Ct. 699, 98 L. Ed. 2d 651 (1988). 'The general rule is that a mistrial is granted only where it is apparent to the court that, as a result of some occurrence during trial, a party has been deprived of the opportunity for a fair trial. *State* v. *Gaston,* 198 Conn. 490, 495, 503 A.2d 1157 (1986); *State* v. *DeMatteo,* 186 Conn. 696, 703, 443 A.2d 915 (1982).' Id., 356." *State* v. *Cooper,* supra, 227 Conn. 441–42.

Here, we cannot say that it should have been apparent to the trial court that the jurors' knowledge of the threatening telephone call deprived the defendant of the opportunity for a fair trial. It certainly was not apparent to the defendant, who did not make a motion for a mistrial. The trial court did not abuse its broad discretion by not declaring a mistrial sua sponte. *State*

v. *Smith,* 200 Conn. 544, 548, 512 A.2d 884 (1986); *State* v. *Fleming,* 198 Conn. 255, 264, 502 A.2d 866, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 347 (1986).

The defendant alternatively claims that the trial court improperly denied his motion for a new trial. We do not agree.

"[T]he right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. . . . A necessary component of the right to an impartial jury is the right to have the jury decide the case solely on the basis of the evidence and arguments given them in the adversary arena after proper instructions on the law by the court. . . . Consideration of extrinsic evidence is jury misconduct and has been found to be sufficient to violate the constitutional right to trial by an impartial jury. . . . Whether juror consideration of extrinsic evidence was prejudicial to a defendant depends on the magnitude of the juror's deviation from his proper role, the degree to which the accused was deprived of the benefits of the constitutional and statutory safeguards, and the likelihood that the impropriety influenced the jury's verdict. . . . Although the trial court enjoys broad discretion in determining whether jury misconduct occurred, and, if so, whether such misconduct prejudiced the defendant . . . the court must have some factual basis on which to exercise that discretion. . . . *State* v. *Migliaro,* 28 Conn. App. 388, 395, 611 A.2d 422 (1992)." (Citations omitted; internal quotation marks omitted.) *State* v. *Brown,* 33 Conn. App. 339, 344, 635 A.2d 861, cert. granted, 228 Conn. 925, 926, 638 A.2d 40 (1994).

The defendant claims that the trial court's inquiry was inadequate, and that "it was factually impossible to ascertain [on the basis of that inquiry] whether the

jurors were able to remain fair and impartial after learning of a death threat to a fellow juror." Here, the trial court asked the jurors: "Now, did any of you have any particular problems in sitting on this case at this time?" The jurors responded in the negative. The court further stated: "Now, I would assume that all of you can still be fair and impartial sitting on this matter, if you can't, kindly let me know now." The jurors did not respond.

"A trial judge is generally in the best position to evaluate the critical question of whether the juror's or jurors' exposure to improper matter has prejudiced a defendant. . . . A trial court has wide discretion in deciding how to pursue an inquiry into the nature and effect of information that comes to a juror improperly as well as its potential effect upon the jury if it learns of it. . . ." (Citations omitted.) *State* v. *Rodriguez,* 210 Conn. 315, 326, 554 A.2d 1080 (1989). We conclude that the trial court's inquiry provided it with a sufficient basis on which to determine whether the jury was able to act fairly and impartially in spite of its knowledge of the threatening telephone call. The defendant, therefore, has failed to demonstrate that the trial court abused its discretion in denying the motion for a new trial.

## V

The defendant's final claim is that his constitutional and statutory rights to be tried by a jury composed of twelve sworn jurors were violated. We do not agree.

Certain additional facts are necessary for a proper resolution of this issue. The original jury consisted of twelve sworn jurors and two sworn alternate jurors. After the close of evidence, but before closing arguments and the jury charge, the juror who had received

the threatening telephone call was excused. The trial court explained, in the presence of the jury, that it would not select one of the alternates until the conclusion of the charge to the jury and that the alternate selected would deliberate with the jury. The trial court selected the alternate juror, in accordance with its explanation, at the conclusion of the charge to the jury but prior to deliberations.

The defendant claims that during the closing arguments, during the charge to the jury and, arguably, during deliberations,[9] only eleven members of the jury were sworn as regular jurors and, therefore, the defendant was deprived of his right to a jury trial. The defendant did not object at the trial; he seeks review, however, under *State* v. *Golding,* supra, 213 Conn. 233. "In harmony with the objective of *Golding,* the defendant's claim may be disposed of by focusing on whichever condition is most relevant in the particular circumstances. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Cooper,* supra, 227 Conn. 440.

In *State* v. *Carter,* 34 Conn. App. 58, 93, 640 A.2d 610 (1994), we held that, "while the defendant does have a statutory right to a twelve person jury, he does

---

[9] The defendant claims that the trial court's failure to administer the oath of a regular juror to the previously sworn alternate juror deprived him of his right to a jury trial. "Alternate jurors, by statute, must have the same qualifications and be selected in the same manner as regular jurors. General Statutes § 54-82h (a). Further, the alternate jurors sit in the trial for the entire case and hear and observe the trial in the same manner as the regular jurors until the time of deliberation. General Statutes § 54-82h (c). An alternate juror, once selected to be part of the regular jury, becomes part of the regular jury 'as though such juror had been a member òf the regular panel from the time when [the case] was begun.' General Statutes § 54-82h (c). Thus, the jury at all time consisted of twelve regular jurors." *State* v. *Carter,* 34 Conn. App. 58, 93–94, 640 A.2d 610 (1994).

not have such a constitutional right." The defendant, therefore, cannot meet the second prong of *Golding* and is not entitled to review.

The judgment is affirmed.

In this opinion O'CONNELL, J., concurred.

LANDAU, J., concurring. I agree with the majority that the judgment of the trial court should be affirmed. I disagree, however, with the majority's conclusion that the trial court improperly found that the proffered defense witnesses' testimony was violative of the rule that "is peculiar to Anglo-American jurisprudence and did not obtain an established foothold in it until the close of the seventeenth century"; *Engel* v. *Conti,* 78 Conn. 351, 354, 62 A. 210 (1905); the hearsay rule.

The facts are set out in the majority opinion and for purposes of this concurrence I repeat those relevant to the hearsay issue. Marcus Thomas and Dwayne Branch, the defendant's witnesses, testified that when they would not tell the police what they wanted to hear, Officer Tony DiLullo asked them, "What do you want, girls, money, what do you want?" It is clear that the introduction of this statement through the testimony of Thomas and Branch was intended to present to the jury the fact that the police would provide girls, money or whatever Thomas and Branch wanted in exchange for a statement that would inculpate the defendant. This testimony would support, therefore, the defendant's defense that he was "railroaded" by the police.

While no precise and universal test of relevancy is furnished by the law, we can safely define relevancy as evidence that conduces in any reasonable degree to establish the probability or improbability of a fact in controversy. 1 B. Holden & J. Daly, Connecticut Evidence (1988) § 67b. It is apparent that the testimony of Thomas and Branch was relevant. The

testimony establishes the probability of a fact at issue, i.e., the defendant's defense that the police railroaded him. When the defendant, through Thomas, offered the testimony, the state objected on the grounds of relevancy. The court ruled that the statement was relevant because it supported the defendant's defense. The testimony could be relevant only if it established the probability of a fact at issue and it could do that only if offered to prove the truth of the matter asserted; therefore, it is hearsay. B. Holden & J. Daly, supra, § 93. Because the hearsay testimony does not qualify as an exception to the rule against hearsay evidence, the trial court was correct in its ruling.

I agree with the remainder of the majority's well reasoned opinion.